WILLIAM McBEE, Plaintiff in Error

*v.*

STATE OF TENNESSEE, Defendant in Error.

372 S.W.2d 173.

(*Knoxville,* September Term, 1963.)

Opinion filed September 11, 1963.

W. E. BADGETT, Knoxville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, LYLE REID, Assistant Attorney General, for the State.

MR. JUSTICE WHITE delivered the opinion of the Court.

William McBee, plaintiff in error, defendant, was indicted for the homicide of George Stewart. He was con-

victed of murder in the second degree and sentenced to serve not less than ten years nor more than twenty years in the state penitentiary. His motion for a new trial having been overruled and the verdict of the jury approved by the trial judge, he has perfected his appeal to this Court and assigns errors.

This is the second time that this defendant has been tried for the same offense. His first trial resulted in a conviction for first degree murder and his punishment fixed at life imprisonment. Upon his appeal to this Court the sentence was affirmed in an opinion written for the Court by Mr. Justice (now Chief Justice) Hamilton S. Burnett, under date of June 10, 1955. A petition for the writ of certiorari was filed with the Supreme Court of the United States, but upon consideration thereof the same was denied.

Thereafter, McBee filed a petition for the writ of habeas corpus in the Federal District Court for the Middle District of Tennessee on the ground that he had not been given sufficient time in which to employ counsel to represent him on the trial of the case. The district court held that McBee had failed to carry the burden of proving that his failure to employ counsel until shortly before trial was due to mistake rather than conscious intent or neglect on his part.

The Sixth Circuit Court of Appeals reversed the district court and granted the petition for habeas corpus on the ground that the district judge should have found as a fact that the failure to employ counsel was due to a mistake rather than a conscious waiver of his right and, therefore, that defendant was denied due process under the Fourteenth Amendment when the state trial judge

refused to grant his counsel a continuance in order to afford him an opportunity to investigate and prepare what he considered to be an adequate defense. *McBee v. Bomar,* 296 F.2d 235 (6th Cir. 1961).

The court of appeals found that the defendant was prejudiced by lack of time for preparation and it cited the damaging testimony of the witness Felton Farmer, and the wife of the deceased. The court called attention to the fact that the wife gave an affidavit after the first trial was over in which she contradicted her former testimony. They concluded that said counsel might well have been able to shake her testimony if given the time to prepare and consult with witnesses prior to the trial. The same witness gave another affidavit repudiating the one given shortly after the trial. The court of appeals apparently considered only the first affidavit in reaching its decision. 296 F.2d at 235. Finally the court of appeals reversed the district court and remanded the case with instructions to release the defendant unless the State desired to try him again. The State elected to try him, resulting in the verdict of the jury aforesaid.

The defendant has made thirteen assignments of error which we shall dispose of in this opinion.

The first two assignments are to the effect that the verdict of the jury is contrary to the evidence and that the evidence preponderates against the verdict and in favor of the innocence of the defendants.

It is well-settled in this State that a conviction in a criminal case will not be reversed on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the accused.

*White v. State,* 210 Tenn. 78, 84, 356 S.W.2d 411, 414 (1962).

■■ It is also well-settled in this State that the verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflict in favor of the theory of the State. Such verdict also removes the presumption of innocence of the accused and raises a presumption of his guilt and puts upon him, here, the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. See *White v. State,* supra; *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57 (1962); *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385 (1960); *Turner v. State,* 188 Tenn. 312, 219 S.W.2d 188 (1949); *Batey v. State,* 191 Tenn. 592, 235 S.W.2d 591 (1950); *Mahon v. State,* 127 Tenn. 535, 156 S.W. 458 (1913); *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826 (1909).

In reviewing the record on appeal from a conviction it is the law of this State "that the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the trial court." *Holt v. State,* supra, 210 Tenn. at 198, 357 S.W.2d at 62.

A careful search of this record reveals that the deceased, George Stewart, left his apartment late at night and went downstairs to defendant's apartment and asked that the occupants thereof turn down the volume on a radio. In simple language he was told "to go to hell." The deceased returned to his apartment immediately. Shortly thereafter, as he prepared to go to bed, a knock was heard on the door and the defendant and two other men entered the room. The defendant told the victim

"Nigger, you can't tell me when to play my radio and when not to play it. Don't you believe I will kill you?", and the victim answered: *"William* (emphasis supplied) I didn't mean any harm at all." To which the defendant responded: "Nigger, don't you believe I will kill you?" And, again, the deceased apologetically remonstrated, "I didn't mean a bit of harm in the world."

The wife of the deceased, Alma Stewart, then added: "Mister, he didn't mean any harm." And the defendant responded to her: "You had better stay out of it." At this point the defendant, without further conversation or provocation, shot the victim one time through the back killing him almost instantly. The three men then departed without the other two having spoken a word.

As aforesaid, the defendant was convicted on the first trial of first degree murder. He submitted affidavits to the effect that he had made a mistake as to the date set for his first trial and although he had several months to prepare his case, he had not hired a lawyer to defend him because he was busy looking for one Coleman Thompson, who he claimed did the actual killing.

The record shows that the homicide occurred on the night of March 24, 1954. The defendant was indicted for first degree murder on April 9, 1954. The case was set for trial on June 18, 1954, and a notice to this effect was placed upon the regular bulletin board maintained by the court for such purpose.

Therefore, the defendant had from April 9, 1954 until the date of the trial on June 18, 1954 to obtain counsel to represent him in this case. As a matter of fact, he was arrested upon the charge of murder shortly after the death of George Stewart on the night of March 24,

1954, and appeared in the City Court of the City of Knoxville on March 26, 1954, at which time he was represented by a lawyer of his own selection by the name of Duncan or Taylor, or probably both.

In this motion for a new trial he made an affidavit stating that he had newly discovered evidence in the form of the testimony of one Kingpure McClendon, who would testify that he saw the defendant leave the room before the shot was fired. He complained that he had been denied due process because his counsel had not had sufficient time to prepare his defense. He claimed that he had seen the posted notice about the date of the trial, but that he thought the date was July 18, instead of June 18, 1954.

Be that as it may, the court of appeals reversed the action of the trial court and the case has now been tried for the second time.

In the interim, two of the witnesses for the State have died. However, their testimony was preserved in the record of the first trial.

Upon the second trial the defendant did not testify and only one witness was used by the defendant and his testimony was effectively impeached as found by the jury.

The newly discovered evidence of McClendon, etc., was not used. Coleman Thompson was not produced or accounted for, nor was any proof actually offered that he ever existed.

The witness William Johnson, appearing for the defendant, stated that he was across the street when the shot was fired, but as he entered the hallway of the apartment where the deceased and the defendant were living

in order to get a drink of whiskey, he saw two men, neither of whom he recognized, pass him in the hall.

On cross-examination he was involved in inconsistencies with his testimony at the first trial. Further, he admitted giving a signed statement to police officers shortly after the shooting in which he stated:

Q. "My name is William Johnson, I live at 923 Nelson Street, and I am employed at C. M. McClung Company." Was that correct?

A. That's correct.

Q. "On Tuesday night, March 23rd, 1954 I was at the apartment of William McBee, 627½ East Vine. My wife, Lucile, and Marie McBee and William were there."

A. That's right.

Q. "William was on the bed and he was drinking heavy."

A. That's right.

Q. "Me and my wife Lucile left about midnight to go home."

A. That's right.

Q. "I found that I was out of cigarettes and went to Brown's Barbecue to get some."

A. That's right.

Q. "As I came out on the street, I saw William McBee and Felton Farmer go into the hallway at 627 East Vine."

A. I don't remember nothing about that.

Q. Now you didn't say that, is that what you are telling us now?

A. I don't remember that.

Q. "I thought they were going in there to get a drink of whiskey and I followed them. Just before I got to the door I heard a pistol fire. William and Felton came out. I went on in and saw a man on the floor, which I later learned was George Stewart. I did not see any other men come out of the room but William McBee and Felton Farmer." Signed William Johnson before Bernard L. Waggoner, witnessed by Captain Bunch. Do you remember talking to Captain Bunch about this?

A. I talked to several, but I didn't know who they was.

THE COURT: What was his answer?

Q. Did you make this statement, William?

A. If it's on that paper, I must have made it.

THE COURT: What did you say? Talk so we can hear you.

A. I said if it was on that paper, I must have said it.

The jury chose to believe the testimony given at the first trial by the victim's wife and Officer Bunch, who interviewed the defendant and investigated the case.

■ When the evidence of the State and the defense is diametrically opposed, it is the duty of the jury to arrive at truth of the situation. *Holt v. State,* 210 Tenn. 188, 198, 357 S.W.2d 57, 62 (1962).

■ According to the testimony of Officer Bunch, the defendant claimed that one *Coleman* Thompson killed

the deceased, but the wife testified that the victim called his assailant ''William.'' She also testified that the victim had asked the defendant to turn his radio down and that the dispute, which led to the killing, was over a radio. The defendant admitted to Officer Bunch that he had a dispute with the deceased in his room shortly before his death and that it was over turning down the volume of the radio. Therefore, we conclude from the evidence introduced on the trial of this case that the verdict of the jury does not preponderate against the evidence and in favor of the defendant. Therefore, the assignments to this effect are overruled.

The next assignments of error are to the effect that the court erred in admitting the testimony of Alma Stewart and Carl Bunch to be introduced from a written transcript thereof from the previous trial for two reasons. One being that no proper ground had been established for the introduction of such testimony, and further, that the court did not require that the entire transcript of the testimony of all of the witnesses appearing in the first trial of the case be read. To have done this would have required the reading of testimony of the defendant himself who elected not to testify in his own behalf. The defendant could have read this testimony had he desired.

██ If perchance the defendant was entitled to have the entire testimony of all the witnesses appearing in the first trial read to the court, then he waived his right by failing to make such a demand during the course of the trial. It is well recognized that a trial court will not be put in error when the action complained of here was not called to its attention during the course of the trial. See Rule 14(4), 203 Tenn. 803, 805 (1958); *Turner v.*

*State,* 188 Tenn. 312, 322, 219 S.W.2d 188, 193 (1949); *Nichols v. State,* 200 Tenn. 65, 91-92, 289 S.W.2d 849, 860 (1956).

The defendant also contends that such testimony should be excluded because it was not properly introduced. He argues that such testimony would have to be introduced by someone who heard it given in the original trial and could certify to its accuracy. The testimony was read from the record made up during the course of the first trial, which record was certified to be correct by the trial judge and was also approved by counsel representing the defendant at that time and in the instant appeal. We do not see any basis for this assignment. Therefore, the same is overruled.

The defendant relies on the case of *Kendrick v. State,* 29 Tenn. 479 (1850). In that case the State was trying to prove the former testimony without the aid of a transcript. It was offering to prove such testimony by someone who had heard it given on the former trial and claimed to have remembered the substance thereof. The rule of that case clearly does not apply here. It is not contended that the testimony given in this case was not the same as that given on the former trial.

The assignment that the State did not prove that the witness Alma Stewart was in fact dead is without merit. During the course of the trial counsel for the defendant stated: "I have an obituary on one of the witnesses by the name of Smith and she testified by the name of Stewart." Obviously, this was Alma Stewart.

In matters of the admissibility of evidence, the trial judge has great latitude and we will not reverse his action unless there is an abuse of his discretion. He ruled

that the State had sufficiently established that the witness was dead and we are satisfied with his conclusion. Therefore, the assignment complaining about the ruling of the trial judge on this matter is without merit.

■ ■ Assignments of error seven and eight charge that the trial court should not have permitted the testimony of the witnesses, Felder and Cody because their names were not placed on the indictment until the commencement of the second trial. T.C.A. sec. 40-2407 provides that it shall be the duty of the District Attorney General to endorse on each indictment, at the time when it is found, the names of such witnesses as he intends to summons in the cause and sign him name thereto. This, however, would not disqualify a witness to testify even though his name did not appear. The rule, as announced in 23 C.J.S. Criminal Law sec. 948, is that the court may in its discretion allow the endorsement of the name of the witness on the indictment at any time if good cause for the delay is shown or if the accused is not prejudiced by such action. Both of these conditions were present in this case. The State had good cause for not endorsing the names of these witnesses on this indictment when it was found in 1954, since these witnesses were used solely for the purpose of establishing the death of Alma Stewart, which occurred after the first trial and, of course, she was alive at the time the indictment was returned.

■ The reason for the rule requiring the names of witnesses to appear on the indictment is to make known to the defendant the names of such witnesses who will be called to testify so that the defendant will not be surprised and handicapped in the preparation of his case. Defendant does not on this appeal claim surprise or prej-

udice, but relies upon technical noncompliance with the statute. We find this contention to be without merit.

The ninth assignment of error complains that counsel for the defendant did not have an opportunity to prepare to cross-examine the witness Cody. He admits in his brief that he was not prejudiced by the testimony of this witness, consequently, it would not be grounds for reversal. This assignment is likewise overruled.

Assignments of error ten and eleven charge error in the admission of the testimony of the deceased's witnesses, Bunch and Stewart, on the grounds that the defendant's attorney did not have an opportunity to prepare his case before the previous trial.

The defendant claimed error in the first trial because his counsel did not have sufficient time to prepare his defense and as a result of that he called the witness Felton Farmer, who became hostile on the witness stand and was harmful to his case. This witness did not testify in the present case, so this objection is no longer tenable.

The other ground upon which the defendant claimed that he was prejudiced by failure of the court to grant him a continuance on the first trial was that the witness Alma Stewart gave an affidavit after the first trial which was placed in evidence in the habeas corpus proceedings. In this affidavit she stated that she was mistaken in her identification of the defendant. In sustaining the petition the court stated that if counsel had an opportunity to investigate the case in order to prepare to cross-examine the witness Stewart that "he would at least been able to shake her identification of petitioner on cross-examination."

In the trial of the instant case the original testimony of Alma Stewart was read and, of course, there was a positive identification of the defendant by her in this testimony. Three affidavits executed by Alma Stewart subsequent to the previous trial were introduced on the second trial. The first affidavit signed in July, 1955 repudiated her original testimony. The second affidavit, which was signed by her in May, 1956, repudiated the first affidavit and re-affirmed her original testimony. This affidavit stated that she was coerced into signing the first affidavit by henchmen of the defendant. A third affidavit was given by Alma Stewart in April, 1958 in which she again repudiated her original testimony and again re-affirmed the statements made in the first affidavit.

The purpose of cross-examination, of course, is to give opposing counsel an opportunity to lessen the effect of a witness's testimony by involving him in inconsistencies or contradictory statements thereby impeaching his testimony. Defendant's counsel could not have been afforded a better opportunity to destroy her testimony that he had by the introduction of her affidavits. Whether her testimony was destroyed by cross-examination or by the introduction of other evidence is unimportant. The important fact is that the jury had a good basis upon which to decide that she was not worthy of belief if it chose to do so. It was within the province the the jury to weigh her testimony. Consequently, lack of an opportunity to cross-examine Alma Stewart was not prejudicial to the defendant in this case and, therefore, is not reversible error.

Assignment of error thirteen charges that the court erred in permitting a letter written by a deceased parole officer to the witness Charles Crow to be introduced.

Mr. Crow was a witness for the defendant and Alma Stewart's affidavits were introduced into evidence as exhibits to his testimony. The court permitted the introduction of the letter as reflecting upon the credibility of Alma Stewart which was the main issue raised by the defense. Certainly, if the officer had been alive his testimony would have been competent and for the reasons heretofore discussed this evidence was, in our opinion, admissible. In any event, the letter contained nothing more than what was stated in her affidavits and its admission, even if considered to be improper, was certainly harmless. T.C.A. sec. 27-117 "forbids us to reverse for any error unless it affirmatively appears to have affected the result." *Strader v. State,* 208 Tenn. 192, 200, 344 S.W.2d 546, 549, 87 A.L.R.2d 963 (1961); see also Rule 14(6), 203 Tenn. 805, 806 (1958).

In finally disposing of this case we note that nine years have passed since George Stewart was shot to death and during all of this time the defendant has been unable to produce Coleman Thompson, the man whom he claimed shot and killed Stewart, and, further, he has not offered any proof that such a person ever existed. In fact, all he has been able to do is to get the wife of the deceased to repudiate her sworn testimony and sign affidavits at his pleasure.

It is our firm belief from reading this record that the defendant is guilty as found by the jury and approved by the trial court, and his appeal here is without merit.

Therefore, all assignments of error are overruled and the case is affirmed.

### On Petition to Rehear

A lengthy petition to rehear has been filed in this

case. We have given due and careful consideration to the matters set out therein. It is our opinion that the petition reargues the matters already thoroughly argued by counsel and fully considered by us in reaching out original conclusion. Under these circumstances it is our duty to deny the petition to rehear. See Rule 32 (Rules of this Court); *Nashville v. State Board of Equalization*, 210 Tenn. 587, 618, 360 S.W.2d 458.

Indicative of the reargument in the petition to rehear is the complaint that the "testimony which was read (from the first trial of this case) was from an unsigned, unauthenticated copy which the Clerk of the Criminal Court stated he found in his office when he took office" and "neither the signature of the trial judge nor of counsel appears on the alleged transcript from which the alleged testimony in the former trial was read."

In reply to these sharply pointed contentions, the record in the present case shows:

(1) That Tolbert F. Taylor, Criminal Court Clerk of Knox County, Tennessee, testified that he had custody of the records of the Criminal Court and, further, upon proper questioning he said:

A This is the record of *State vs. William McBee* which a copy is kept in this office, was filed in the State Supreme Court.

Q And I'll ask you whether or not, Mr. Taylor, that was a copy of a trial record had in this court in the year 1954?

A Yes sir.

The record was then filed as Exhibit #1 to the testimony of Mr. Taylor. The record of the case of 1954 shows

a certification of the technical record by Mr. Taylor as Criminal Court Clerk.

(2) On the last page of the Bill of Exceptions made up on August 25, 1954, it is stated:

Now comes the defendant by his attorneys and tenders the foregoing as his bill of exceptions * * * which * * * is signed, sealed and ordered by the Court to be made a part of the transcript of the record in this case.

The handwritten signature of the judge appears thereon. The names of Hal H. Clements, Jr., District Attorney General, and Carl A. Cowan, his assistant, appear in script. The handwritten signatures of W. E. Badgett (counsel of record in the instant case) and H. B. Weimar appear as counsel for defendant.

Therefore, we cannot understand the statement of counsel that we were mistaken in the view set out in our original opinion that the record of the first trial was not approved by him and by the trial judge.

The petition to rehear is denied.