GARY ROWE O'NEIL, BOBBY EUGENE FISHER
and ROGER WARD RATHBONE, Plaintiffs in Error,
v. STATE OF TENNESSEE, Defendant in Error.

455 S.W.2d 597.

Court of Criminal Appeals of Tennessee. March 13, 1970.

Certiorari Denied by Supreme Court June 1, 1970.

520

James E. Beckner, Donald B. Oakley, Joseph L. Reed, Morristown, for plaintiffs in error.

David M. Pack, Atty. Gen., Arnold Peebles, Jr., Asst. Atty. Gen., Nashville, Heiskell H. Winstead, Dist. Atty. Gen., Rogersville, Charles E. Fraley, Asst. Dist. Atty. Gen., Church Hill, for defendant in error.

## OPINION

DWYER, Judge.

A jury in the Criminal Court of Hamblen County convicted Gary Rowe O'Neal, Bobby Eugene Fisher and Roger Ward Rathbone of committing the offense of armed robbery. The punishment of Gary Rowe O'Neil, an adult, was fixed at confinement for 21 years in the State Penitentiary. The punishment of the two juveniles, Bobby Eugene Fisher and Roger Ward Rathbone, was fixed at confinement for 10 years in the State Peniten-

tiary. Judgment was rendered on the verdict as returned and the three defendants, through court-appointed counsel, have seasonably appealed to this court.

The facts are briefly summarized. The Holiday Inn night clerk at Morristown, Tennessee, was robbed of the sum of approximately $500 at gunpoint in the early morning hours of January 11, 1969. The three defendants were arrested a short time thereafter on Highway 11-E when they made an improper turn. This arrest culminated in the defendants being turned over to Hamblen County officers as the responsible parties for the holdup of the Holiday Inn. They were returned to the Holiday Inn that night and identified by the night clerk, i. e., O'Neil as the gunman and Rathbone, as being present, as the two who had perpetrated the robbery. They were lodged in the Hamblen County Jail and on the morning of the day of the holdup they were interviewed and statements were taken from O'Neil and Rathbone. On January 14, 1969, the investigating officer went to the Hamblen County Jail after Fisher had requested to see him. Fisher informed the officer that O'Neil had the holdup weapon in his cell. He also gave the officer a statement as to his participation in the holdup, relating O'Neil had threatened to harm Rathbone if Fisher did not wait for them. He said he would shoot Rathbone. Rathbone read this statement as given by Fisher and signed it as being correct. O'Neil's cell was searched with a pistol being recovered. This was introduced into evidence. The trial court, out of the presence of the jury, had a hearing on the competency of the confessions. The only proof presented was the testimony of the investigating officer. The defendants did not testify. Exhibits may be found in the record reflecting forms drafted

in compliance with the *Miranda* holdings and waivers of those rights signed and executed by the three defendants. The trial court found as a matter of law and fact that the statements as given were in compliance with the *Miranda* holdings and allowed them, over objection, to be submitted to the jury. At the trial the defendants did not testify and offered no proof. Preliminary motions were made by the juvenile defendants Rathbone and Fisher (1) to remand their case to juvenile court for further proceeding and (2) to grant severances so that their cases might be tried separately and individually. The motions were overruled by the trial court. The adult defendant O'Neil made no such motion.

The three defendants have filed numerous assignments of error, contending their conviction was had not in accordance with the law.

■ ■ All three question and contend there is not a sufficiency of proof in this record to sustain the verdict and the verdict is contrary to the law. We have examined this record and find there is a sufficiency of evidence and that it does not preponderate against their guilt and in favor of their innocence. The defendants O'Neil and Rathbone were identified by the victim and money taken in the holdup was recovered from O'Neil. All three defendants were arrested a short time after the robbery and all three admit to their part in the holdup. In considering and passing on these assignments, this court is bound by the rule that a conviction in a criminal case will not be reversed on the facts unless it is shown by the defendants that the evidence preponderates against the verdict and in favor of their innocence. Schweizer v. State, 217 Tenn. 569, 399 S.W.2d 743;

Bolin v. State, 219 Tenn. 4, 405 S.W.2d 768. The defendants have not overcome the presumption of guilt raised by the verdict against them. Accordingly, the first three assignments of the defendants are overruled.

All three defendants contend the verdict is excessive as to show prejudice and caprice on the part of the jury. The verdict of 10 years as returned against Fisher and Rathbone is the minimum punishment for armed robbery. The verdict of 21 years returned against O'Neil is within the limits as prescribed by law for the offense of armed robbery. In Ryall v. State, 204 Tenn. 422, 321 S.W.2d 809, the court said:

"The punishment imposed upon the defendant by the jury was within the limits allowed by law. This did not indicate passion, prejudice and caprice. Edwards v. State, 202 Tenn. 393, 304 S.W.2d 500."

The assignments are accordingly overruled.

Fisher and Rathbone both contend the court erred in not granting their motion for a severance and not allowing them to be tried separately one from the others. The question of severance addresses itself to the sound discretion of the trial judge. In the absence of an abuse of that discretion his action on denying the severance will not be disturbed on appeal. In this record we find all three defendants confessing as to their complicity in the holdup. In these confessions they each admit their individual role and intertwine their part with the others. Under these circumstances, in viewing this record, we find no abuse of discretion on the part of the trial judge in denying their motion for severance. Ellis v. State, 218 Tenn. 297, 403 S.W.2d 293; Monts v.

State, 218 Tenn. 31, 400 S.W.2d 722; Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385; Hunter v. State, Tenn. 440 S.W.2d 1 (1969). We would also add that no grounds are made upon which they predicate their motions for severance other than a general statement by counsel that evidence he thought might be admitted would deprive them of a fair trial. As related, from a review of this record the aforementioned facts and circumstances pertaining to the confessions, we fail to find where the defendants were clearly prejudiced by the court denying defendants' motions for severance. The assignments are accordingly overruled.

■ The defendants Rathbone and Fisher complain the court erred in not granting their motion to remand them to juvenile court for disposition. We find no error in the trial court denying this motion. The court, by the indictment returned, had jurisdiction of the subject matter and of the person. Under the law all that the juvenile judge could do under T.C.A. Section 37-265 was to dismiss the cause and remand the juveniles back to the sheriff to be dealt with as provided in criminal law. It is not clear from this record but it appears there had been a hearing before the juvenile judge on the 20th of January, 1969. Therefore they were properly before the criminal court at the time of the trial. The assignments are accordingly overruled.

■ The defendants contend in their assignments that the confessions of the defendants were improperly obtained. They bottomed their assignments on the premises that follow. O'Neil's statement was not taken in accordance with the rulings enunciated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. He

also contends proof of this is that O'Neil did not sign the statement but initialed it only. The record reflects he signed a waiver of his rights form containing the *Miranda* warning in its entirety. The trial court found as law and fact from the proof adduced out of the presence of the jury that the statement was taken in compliance with the mandates of *Miranda*. The fact that he initialed the statement does not void the statement. It is and would be only a fact and circumstance to consider with all of the proof. The assignment as to O'Neil is overruled. The record further reflects and it was found as fact by the trial court that Rathbone and Fisher both signed waiver forms acknowledging the fact that they had been advised in accordance with the *Miranda* holdings contained on this form. The two juveniles contest the competency of the confessions on the grounds the statements were violative of the holdings found In Re Gault (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. Also, as minors they could not in the absence of counsel waive their rights and the failure to take the juveniles before a juvenile judge as required by T.C.A. Section 37-252 makes the confessions inadmissible.

██ ██ Defendants Fisher and Rathbone, in support of their assignment, cite an unreported opinion of this court styled Hayden Lee Chestnut v. State, at Knoxville, filed April 30, 1969. The main opinion in that case was written by Judge Charles Galbreath. There was a reversal had, as cited by the attorney general in his brief, premised on the absence of a waiver knowingly and intelligently made by the confessing juvenile. In discussing this the court observed that the "totality of the circumstances" must be looked to in determining whether the State had carried the heavy burden of establishing

the knowing and intelligent waiver. (We might note Rathbone in this record did not want his mother to be notified of his predicament.) In the *Chestnut* case, *supra,* the court found that the State, under the circumstances, did not carry the burden of showing there was a knowledgeable waiver by Chestnut. In this record, unchallenged and found as fact, the juveniles did execute a knowledgeable and intelligent waiver of their rights. In the *Chestnut* case, *supra* the officer testified that defendants' parents were not notified because he would have a "mess on his hands." This is not found in this record although the officer was aware they were minors. The court then went on to discuss the failure of the officers to obey the mandate of T.C.A. Section 37-252.

In the *Chestnut* case, *supra,* the court said:

> "* * * but only that a confession may not be obtained from him by violation of his rights as a juvenile, whether these rights be derived constitutionally or statutorily."

In the concurring opinion written by Presiding Judge Mark A. Walker, the following language is pertinent, which we herein adopt:

> "I do not agree that a confession by a juvenile is inadmissible regardless of warnings if obtained before he is taken before the juvenile court in accordance with T.C.A. Section 37-252; and I do not think that we are concerned here by Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, in its construction of the Federal Juvenile Court Act.

> "In my view, a juvenile defendant's confession which

is voluntarily given to police authorities is not inadmissible at his trial as an adult solely because the defendant was within the jurisdiction of the juvenile court at the time the confession was elicited. See State of Florida v. Francois, Fla., 197 So.2d 492 (1967); People v. Lara, 67 Cal.2d 365, 62 Cal. Rptr. 586, 432 P.2d 202."

We might add that a juvenile hearing was had on January 20, 1969 as heretofore mentioned. Prior thereto the juveniles were taken into juvenile court for a bond setting on January 13, as evidenced by the brief of O'Neil. Synopsizing, they were arrested on Saturday morning the 11th of January. O'Neil confessed to the robbery shortly thereafter. Fisher gave a statement denying knowledge of a robbery but detailed the activities of all three on the night of the robbery. Rathbone made his confession on Saturday the 11th of January around noon. All had and were properly advised in accordance with *Miranda*. All executed and signed written waivers, which was found as fact by the trial court. On the 14th of January Fisher sent for the investigating officer. After being again properly advised and signing a written waiver, he confessed his complicity in the robbery. We have read In Re Gault, *supra,* wherein we find the following language:

"* * * we emphasize again that we are here concerned only with a proceeding to determine whether a minor is a *'delinquent' and which may result in commitment to a state institution.* Specifically, the question is whether, in such a proceeding, an admission by the juvenile may be used against him in the absence of clear and unequivocal evidence that the admission was made with knowledge that he was not obliged to speak

and would not be penalized for remaining silent." (emphasis supplied)

Then, from a close reading we infer where juvenile or adult is properly warned, as per *Miranda,* the statement would be competent.

■■ It is not necessary for a juvenile to have parents or counsel present to voluntarily confess to a crime. People v. Lara, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202. Under the totality of the circumstances found in this record the assignments are overruled.

We next turn our attention to the assignment of all three defendants in which they invoke Bruton v. United States, (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, and contend thereby their constitutional rights were violated by allowing over objection the statements of each other in evidence in this joint trial. We start our evaluation of this assignment by noting that a careful reading of Bruton v. United States, *supra,* does not give error carte blanche in every case where statements have been admitted. As evidenced by a later ruling by the Supreme Court of the United States in Harrington v. California (1969) 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284, wherein under the facts and circumstances in that record the court found there was a violation of the *Bruton* rule. It was held that the error was harmless. In Bruton v. United States, *supra,* the confessing non-testifying co-defendant's statement inculpating Bruton was introduced in evidence with instructions by the court to the jury on how to receive this type evidence as to Bruton. This was the rule enunciated in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d

278, and overruled by Bruton v. United States, *supra*. We note in *Bruton,* 88 S.Ct. at page 1622:

"The Solicitor General has since submitted a memorandum stating that "in the light of the record in this particular case and *in the interests of justice*, the judgment below should be reversed and the cause remanded for a new trial.' The Solicitor General states that this disposition is urged in part because '[h]ere it has been determined that the confession was *wrongly admitted against [Evans] and his conviction has been reversed, leading to a new trial at which he was acquitted."* (emphasis added)

We also find at page 1627 in the *Bruton* case, *supra,* the Supreme Court discussing the court instructing, as was done in this record, on how to receive this type evidence:

"* * * We agree that there are many circumstances in which this reliance is justified. Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593; see Hopt v. People of Utah, 120 U.S. 430, 438, 7 S.Ct. 614, 617, 30 L.Ed. 708; cf. Fed.Rule Crim.Proc. 52(a). It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in Jackson v. Denno, supra, there are some contexts in which the risk that

the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Compare Hopt v. People v. Utah, supra; Throckmorton v. Holt, 180 U.S. 552, 567, 21 S.Ct. 474, 480, 45 L.Ed. 663; Mora v. United States, 5 Cir., 190 F.2d 749; Holt v. United States, 10 Cir., 94 F.2d 90. Such a context is presented here, * * *"

■ O'Neil in this record did not move for a severance; Rathbone and Fisher did. All three defendants had made inculpating confessions in which they each admitted their guilt in committing the robbery. They all three stated in their confessions they were with one another; then, it must follow that each confession, as to the confessor, was competent and admissible under all rules of evidence. The only objectionable part to the individual confessions would be when the confessor *named* his participating co-defendants. There was, in O'Neil's statement, direct inculpation as to his being the "trigger" man. Rathbone made in his statement direct inculpatory statements about his part in the holdup. Fisher's statement made direct inculpatory remarks about his participation in the holdup, although he attempted to put the responsibility on O'Neil. In this record under these facts and circumstances, with Bruton v. United States, *supra,* in mind, to say this was error, *i. e.,* violative of the confrontation clause of the Sixth Amendment, to allow these statements to be used in evidence *we believe not.* None of the three defendants testified or offered any proof. Are we then to say under the facts and circumstances found in this record that the mere invoking of the Bruton v. United States, *supra,* rule makes the use of these state-

ments reversible error? We do not so hold. We feel from a review of the record that as reflected in the quoted portion of Bruton, supra, this is one of the circumstances in which proper instructions by the court to the jury on how to receive this evidence was effective. There was no Evans situation developed in this record. The record reflects further the court stated, "In the interrogation of the Jurors, I heard every question that was propounded to them. They answered the question that they could consider them as three separate individuals, which the Court will instruct them to." (He charged consistently in the trial how the juror was to receive evidence of the statements naming the other defendants made out of their presence.) We are of the opinion this is one of the contexts in which the jury, under the facts and circumstances developed could obey and follow the instructions of the court as found in this record. The Bruton ruling was intended to give defendants in cases of that kind under those circumstances a shield affording protection from confessing non-testifying co-defendants. It was not intended to equip all confessing non-testifying co-defendants under all circumstances with a sword so at their choice they may carve their way out of lawful convictions. We therefore hold the statements were competent and properly used in evidence, thereby rejecting the assignments of error pertaining thereto.

 There is an assignment pertaining to the gun being introduced into evidence. We hold that whether it was the gun used in the holdup was a jury question. We note Fisher's statement of the 14th of January. He informed officers the pistol O'Neil had in his cell was the weapon used in the holdup. The assignment is overruled.

■ There is an assignment in which Fisher and Rathbone contend it was error for the court not to charge on lesser included offenses. Instructions are required without request if the proof raises that issue. T.C.A. Section 40-2518. When there is no evidence to support a lesser included offense so that the accused can only be guilty of the greater or no offense at all, it is not error to refuse to instruct on the lesser included offenses. James v. State, 215 Tenn. 221, 385 S.W.2d 86; Patterson v. State, 218 Tenn. 80, 400 S.W.2d 743; Bolin v. State, 219 Tenn. 4, 405 S.W.2d 768. There was no such evidence to be found in this record. The assignment is accordingly overruled.

■ Fisher and Rathbone complain as to the argument made by the attorney general. The argument complained of is not a part of the bill of exceptions and is therefore not before this court. The assignment is overruled.

■ ■ Rathbone contends the identification of him by the victim was violative of the principles enunciated in United States v. Wade (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. The in-court identification of Rathbone by the victim was not objected to at the time of its admission. Objection to evidence must be made at the time of introduction or it will not be considered. Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385; Turner v. State, 188 Tenn. 312, 219 S.W.2d 188; Nichols v. State, 200 Tenn. 65, 289 S.W.2d 849; Harless v. State, 189 Tenn. 419, 225 S.W.2d 258. We further note that *Wade* held that absence of counsel at pre-trial lineup renders courtroom identification inadmissible unless it is shown that the in-court identification is free from any

taint of the illegal showup. There are enumerated many factors which might be shown which overcome the tainted identification at the hearing. In this record there was no lineup, per se, held. The defendant Rathbone was returned within a short while after the holdup and viewed by the victim, which identification, in addition to the circumstances surrounding it were less hazardous to Rathbone than the circumstances found in Stovall v. Denno (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. We accordingly overrule the assignment in view of the record failing to reflect that the in-court identification by the victim was tainted in any manner by the officers or the circumstances.

All assignments having been evaluated and found meritless, we affirm the judgment which the trial court afore imposed.

OLIVER and RUSSELL, JJ., concur.