**Delthia Ann GRAVES and Gilbert Lawrence Callaway, Plaintiffs in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

July 31, 1972.

Rehearing Denied Sept. 22, 1972.

Certiorari Denied as to Callaway by Supreme Court Dec. 4, 1972.

Jay Fred Friedman and Braxton Gandy, Memphis, for plaintiffs in error.

David M. Pack, Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville,

Terry L. Lafferty and Jewett H. Miller, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

GALBREATH, Justice.

In their joint trial in the Criminal Court of Shelby County the plaintiffs in error, Delthia Ann Graves and Gilbert Lawrence Callaway, were found guilty of murder in the first degree while perpetrating the felony of burglary in the first degree and were respectively sentenced to seventy (70) years and twenty-five (25) years in the penitentiary. Both appeal alleging between them some fifty-three assignments of error, a number of which are urged jointly and some of which are reiterative of others.

 Those assignments urged by the defendant Callaway challenging the sufficiency of the evidence are overruled. The jury had before it convincing and corroborated evidence from an accomplice, Mrs. Carol Robbins, describing in minute detail how she, Callaway and Graves burglariously entered the home of Mrs. Ruth Haynes in the predawn hours of October 26, 1970, with the intent to obtain money the latter two thought was concealed on the premises by the elderly widow who they believed mistrusted banks. According to Mrs. Robbins the two appellants seized Mrs. Haynes and took her into another part of the building. She heard noises, and upon investigating she saw the victim prostrate on the floor face down and tied with Mrs. Graves and Callaway holding her down. After searching for the money they came to steal, the trio fled the scene when Mrs. Haynes grandnephew came to see her about 8 A.M. In climbing over a fence in the back of the victim's home, Mrs. Robbins lost her billfold from her purse where it was found by the investigating officers. Medical testimony indicated that death was due to manual strangulation and a blow to the head.

The defendant Callaway vigorously denied the role Mrs. Robbins described he took in the burglary and attempted robbery during which Mrs. Haynes was killed and sought to place the blame on the two women. The defendant Graves did not testify.

 The conflicting testimony made out a clear issue of fact for resolution by the jury, and we cannot say that the evidence preponderates against its verdict and in favor of the innocence of Callaway. This we would have to do in order to reverse his conviction for insufficiency of evidence. See McBee v. State, 213 Tenn. 15, 372 S.W.2d 173. There was ample proof of burglary to support the jury's finding that the murder was committed during the perpetration of that felony even if the entry into the victim's home was made through an unlocked door. See Goins v. State, 192 Tenn. 32, 237 S.W.2d 8.

Many of the assignments of error complain of what is termed "General Information Subpoenas" said to have been issued by the District Attorney General for witnesses to appear at the office of that official to be interviewed, and of the failure of the court to grant a motion for the issuance of such subpoenas by counsel for the defendants. Error is also assigned to the failure of the court to deny the State the right to use these various witnesses whose anticipated testimony was characterized by motion as "tainted."

Exhibited to the motion of the defendants are copies of instruments containing the following notice:

"TO _____
You are summoned to appear in the office of the Attorney General, 3rd Floor, 157 Poplar Ave. at 11:30 A.M. on Tues., April 20, 1971 to confer with Asst. Atty. Gen'l.
 Lt. Lafferty _____
Roy M. Nixon, Sheriff
 Tatum D.S."

 No authority exists for the District Attorney Generals of this State to cause the issuance of subpoenas to secure

the attendance of witnesses before him or any representative of his office. The power to send for witnesses for the purpose of investigating suspected crime is by statute conferred upon the grand jury alone.

"The grand jury shall send for witnesses whenever they, or any of them, suspect that an indictable offense has been committed."

T.C.A. § 40–1617.

"The clerk of the court, on the application of the grand jury, shall issue subpoenas, in such cases, for any witnesses the jury may require to give evidence before them; and such witnesses, being subpoenaed and failing to attend, will be liable, and may be proceeded against as other defaulting witnesses."

T.C.A. § 40–1618.

If the grand jury is not in session the District Attorney General may cause witnesses to be subpoenaed but only for appearance before the grand jury.

"The district attorneys may call upon the clerks of their various courts for process, between the terms of their respective courts, to secure the attendance of witnesses before the grand juries on the first day of the succeeding term, whenever, in their opinion, it is necessary to secure the ends of justice and protect the interests of the state."

T.C.A. § 40–1619.

Our Supreme Court has condemned the practice of District Attorney Generals causing subpoenas to be issued even though the witness was directed to appear before the grand jury in the absence of specific request of the grand jury and said:

"[B]y what authority does an attorney-general assume to perform the functions and exclusive duties of the grand jury? The mere fact that he is an officer of the court and may visit the grand jury, prepare and present indictments to them, and prepare instruments when directed by the grand jury, does not imply an authority to assume any of the duties assigned by law to a grand juror. If he may assume the office of grand juror for one purpose, why may he not do so for every purpose? If because he suspects a violation of law, he may of himself and of his own motion order a subpoena for witnesses to go before the grand jury to give evidence touching the same, why may not the sheriff or constable who waits upon the grand jury do so? Why may not the judge himself or any attorney for the court assume and practice the power?

"It requires a judge, attorney-general, attorneys, clerks, sheriffs, etc., to constitute a court, and each is an officer of the court, so if we construe the law directed to grand juries to include one officer of the court, we must for the same reason construe it to embrace all officers of that court.

\* \* \* \* \* \*

"That the Legislature did not intend to confer upon attorneys-general the power to order process of subpoena, in the sort of case before us, is manifest from section 5090a [40–1619], by which he is empowered to call upon clerks between terms for process to secure the attendance of witnesses before the grand jury at the succeeding term when, in his opinion, it is necessary to secure the ends of justice and protect the interests of the State."

Warner v. State, 81 Tenn. 52.

Why the District Attorney General of Shelby County persists in issuing illegal subpoenas in the face of the clear admonition of the Supreme Court and the legislative restriction binding him is not known, but it would be well for all those involved in the practice, including the sheriff and his deputies, to cease and desist from such tactics absent authorization of law. As the State candidly points out in its brief, it is perhaps the subjects of the bogus subpoenas

who are the proper parties to complain, and in the absence of any showing that the defendants were prejudiced, they personally may have no standing to complain. However, utilizing apparent police powers the attorney general does not possess with the cooperation of the sheriff to do that which a defendant in a suspected crime may not do smacks of official oppression which should not be tolerated, and it is strongly urged that the practice be abandoned.

█ As the trial judge correctly ruled when requested by motion to do so, there is no lawful authority for him to issue subpoenas compelling witnesses to submit to interrogation by attorneys for the defense for investigative purposes; and since there has been no showing that the witnesses who were directed by the sheriff to come to the attorney general's office were in any wise tampered with so as to effect their testimony, the assignments of error under discussion are overruled.

█ Other assignments of error complain of the refusal of the judge to declare a mistrial when one of the prospective jurors during voir dire frankly admitted he had a preconceived opinion as to the guilt of the defendant Graves. One of the purposes of voir dire is to qualify the members of the prospective jury as unbiased and open minded. The fact that one or more jurors may have formed an opinion as to guilt or innocence and expresses that opinion while being interrogated in the presence of other prospective jurors would not disqualify the other jurors unless it appears that the expression so influenced them that they shared the preconceived opinion. All of the jurors who served on this case were, it is assumed in the absence of proof to the contrary, impartial and qualified. These assignments are overruled.

█ It is contended by both defendants that the State suppressed evidence by not informing them of a person identified as Mrs. Juanita Holcomb who reportedly gave her name and address to another witness with the request that the police contact her. It developed that the police were unable to find the person and that no one had lived at the address given for several weeks. There was no suggestion as to what, if anything, this person knew about the case under investigation at the time, and she was never located. Under such circumstances no evidence could possibly be said to have been suppressed, and the court correctly denied the motion made for a mistrial. The defense was aware of everything known to the police as to the supposed witness for some two days before the State rested its case, and it is supposed that during that time and before the filing of the motions for new trials diligent efforts were made to locate her in efforts to ascertain why she wanted the police to talk to her. Here again no prejudice to the cause of the defense has been demonstrated.

During the cross examination of the State's key witness, Mrs. Robbins, she was repeatedly asked if any promises had been made to her by the prosecution to solicit her testimony. She repeatedly denied that she had been granted any concessions or promised anything for her testimony but was motivated only by a desire to tell the truth since her attorney had advised her that was the best course for her to follow. She was being interrogated as to rumors she had heard as to the sentence she would probably receive when tried herself, and at this point her own attorney who was present in the courtroom interjected an objection, it being his theory that whatever she answered might possibly be prejudicial against her on the anticipated trial in the future. Some discussion took place in the presence of the jury and more lengthy ones transpired after the jury was excused resulting in the judge, in effect, overruling the objection of the witness' counsel and she was instructed to answer the questions as to what sentence she might receive. Error is assigned to the failure of

the court to grant a mistrial based on the alleged misconduct of Mrs. Robbins' counsel.

 It is difficult for us to see the relevancy of what Mrs. Robbins may have heard from jail inmates or others as to what she might expect as punishment for her participation in the crime so long as the State had nothing to do with the rumors or speculations. A witness with an interest to be protected has the right to counsel, and we find nothing improper in the actions of Mrs. Robbins' counsel in seeking to protect the apparent interest she had in not putting to record what her sentence might or might not be when called to answer for the serious crime she was accused of helping to commit. In any event, the defense was permitted to exhaustively cross examine the witness on the subject, and any error involved was beneficial to them.

 Other assignments are based on the State's being permitted to prove that the attorney for Mrs. Graves, Jay Fred Friedman, Esquire, undertook to investigate the crime and to advise Mrs. Robbins as to what course she should follow prior to the finding of her lost billfold and her arrest. The State had already introduced testimony that during the initial police investigation Mr. Friedman came to the scene of the crime. A former secretary of his was called as a witness to this fact also. It is the contention of the defense that this was an effort on the part of the State to infer some sort of impropriety on the part of Mrs. Graves' counsel calculated to have a prejudicial effect on both defendants. Part of the duty of an attorney representing clients who have been, or may be, accused of crime is to conduct such investigation as he feels necessary and proper to protect that client's future interests. If in doing so he assists or conducts his own investigation at the same time the police do we see nothing prejudicial in the jury being acquainted with this fact. While it may not be totally relevant on the issue of guilt or

innocence, to the extent that such testimony does not interfere with the confidential relationship between attorney and client no reversable error is involved in such proof. Since it was Mrs. Robbins herself who testified as to the advice Mr. Friedman gave her at a time when he was not representing her but only Mrs. Graves, no such relationship could be said to exist.

 Error is assigned by Callaway only as to the admission of a photograph of the deceased showing the injury inflicted to the head. The victim was an elderly woman in poor health, and the issue of whether her death was from natural causes or resulted directly from the mistreatment of the defendants was before the jury. Under such circumstances we cannot say that the pictorial evidence of the severity of the wound was not of probative value and as such it was admissible in the absence of a stipulation as to the cause of death. Although it is contended by Callaway that the purpose of admitting this picture was to inflame the passions of the jury in an effort to have them return a death sentence, the fact that the jury fixed punishment at near the minimum for the serious crime militates against this theory. This does not indicate minds inflamed by prejudice or emotionally motivated. See Palmer v. State, 1 Tenn.Cr.App. 223, 435 S.W.2d 128.

 We find no merit in the refusal of the court to grant a severance to Callaway. Although it is earnestly contended on his behalf that the fact Mrs. Graves had recently been convicted in another murder case would unduly hamper him in his defense, we cannot hold as a matter of law that the trial court abused his discretion in finding that he could receive a fair and impartial trial. We cannot reverse in the absence of such a showing. See O'Neil v. State, Tenn.Cr.App., 455 S.W.2d 597. By and large people choose their own associates, and the fact that Mr. Callaway embarked on this venture with a notorious person whose character was, to say the least, of questionable merit was a factor

he could not divorce himself from even if the trials had been separated.

■ Likewise we must uphold the lower court's refusal to grant the defendant Graves' motion for a change of venue. See Swain v. State, 219 Tenn. 145, 407 S. W.2d 452. There is no showing that his discretion in this ruling was abused since no evidence was presented in support of the motion.

■ Similarly there was no showing of an abuse of the court's discretion in denying Graves' motion for a continuance. Particularly is this true in light of the fact the defendant requested an early trial. In the absence of a clear showing of an abuse of discretion we cannot disturb the lower court's ruling on application for continuances. See Oden v. State, Tenn.Cr.App., 453 S.W.2d 441.

■ No error was involved in the refusal of the court to order the State to furnish the defense with a copy of the co-defendant Robbins' statement given police with the approval of her attorney. While such statements must be furnished upon request to the attorney representing the declaring defendant, there is no compulsion for the court to order codefendants' statements furnished other defendants. T.C.A. § 40–2044, and Hudgins v. State, Tenn.Cr. App., 458 S.W.2d 627.

■ Overruled also is an assignment of error by Callaway to the effect the jury was qualified in a manner so as to suggest to them the infliction of death as punishment. Even those juries selected in such a manner as condemned by the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed.2d 776, so as to systematically exclude all persons who oppose capital punishment may render a valid verdict when they do not impose the death penalty in the absence of any showing that the jury as selected was necessarily "prosecution prone." Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797.

■ In the absence of any showing that the jury was improperly influenced by being allowed to listen to and watch radio and television during this lengthy trial during the periods they were sequestered, we find no merit to the assignment of error alleging that such privileges were permitted.

■ A number of pretrial motions were made to require the State to furnish information as to the names of witnesses, access to exculpatory evidence in the possession of the State, production of F.B.I. reports, the criminal records of State's witnesses and fingerprints or photos of same. The trial court properly ordered the State to furnish such information as the names of the witnesses intended to be called by the State but declined to order the production of any fingerprint evidence or exculpatory evidence in the absence of any specific claim by the defense and in face of denial by the State that such evidence existed. Events developed at trial failed to reveal any such evidence that would have been of benefit to the defendants. While we do not hold that the court may not, if he deems it in the interest of justice, order the State to make available such items as F.B.I. reports, police records of witnesses, etc., he is certainly justified in refusing to do so if in his opinion such disclosure is not needful to insure the orderly administration of justice. As we said recently:

"[T]he type of evidence the defendant designated in his disclosure motion predicated on T.C.A. § 40–2044 would not fall within that statute's provisions regarding 'books, papers, documents or tangible objects, obtained from or belonging to the defendant or * * * others' but would be the conclusionary type of subjective information obtained from other witnesses, primarily the prosecutor, not made available by the statute which excludes 'any work product of any law enforcement officer or attorney for the state or his agent or to any oral or written statement given to any such officer * * * by any wit-

ness other than the defendant.' " Elliott v. State, Tenn.Cr.App., 454 S.W.2d 187.

 The assignments complaining of the failure of the court to grant all of the requests for disclosure are overruled. So, too, is another alleging error in the refusal of the trial court to grant Graves' motion seeking to supress any evidence obtained by the police as a result of illegal wiretaps. It was alleged in accompanying affidavits that the arrest of the defendant could have only occurred from information confidentially communicated by telephone. Even if the defendant was apprehended as a result of improper wiretap, this was not evidence but a result of the lead thus obtained. There is no immunity from an illegal arrest. State ex rel. Wood v. Johnson, 216 Tenn. 531, 393 S.W.2d 135. Certainly there could be no reversible error involved because of the methods, illegal though they might be, through which the accused is tracked down and apprehended.

 Error is assigned to the action of the trial judge in permitting the business manager of South Central Bell Telephone and Telegraph Company to testify regarding long distance telephone calls between the defendant Graves' apartment and a lawyer in Oceola, Arkansas, who was representing the co-defendant Robbins' boy friend and others in jail in that city. Inasmuch as Mrs. Robbins testified that the purpose of her association with the other two defendants was to raise money to make bail for her boy friend, this testimony was relevant and material on the issue of motive for the attempt to burglarize the victim's home. The assignment is overruled. The witness was competent to testify as to the records he said he maintained in the course of his business.

 An assignment to the effect that certain testimony of State's witnesses was at variance with the testimony of others must be overruled. It is for the jury to settle any material discrepencies between the testimony of all the witnesses.

 No substance is found in the defendant Graves' further contention that portions of the State's evidence resulted from the coercion of witnesses.

 It is contended in assignments of error by Graves that certain articles found by the police when they went to the apartment formerly occupied by the defendant Graves and a young man holding himself out as her husband were inadmissible because the search warrant the officers had was not properly issued and did not describe all of the articles found in the apartment from which Mrs. Graves had moved some weeks before the officers entered it on the 6th day of November. The trial judge found that the affidavit in the warrant which was claimed to be insufficient was in fact proper. It set out that the affiant, a Memphis police detective, had the following information:

"On October 26, 1970, Mrs. Ruth Elizabeth Haynes was found dead in her home at 1945 Young Avenue, Memphis, Shelby County, Tennessee by her nephew, Matthew Reynolds. Affiant has been informed by Medical Examiner, that death was caused by multiple blows to the head between the hours of 5:30 a. m. and 8:00 a. m. of October 26, 1970. Affiant has been informed by a reputable person that on October 25, 1970, Delthia Ann Graves accompanied by another woman was at 1945 Young and has positively identified her photographs. Affiant was informed by Matthew Reynolds that Mrs. Haynes' body was found at 8:15 a. m. and that a reputable person has positively identified Delthia Ann Graves, accompanied by a white male, leaving Mrs. Haynes' premises at approximately 8:05–8:10 a. m. and getting into a white car. That Delthia Ann Graves was wearing a brown-green jacket and a bluish tinge hair piece. The Affiant has been informed by the resident manager that Delthia Ann Graves, using the name Mrs. David McClain, lives at this address and wears a blue tinge wig."

The trial judge found that the affidavit contained sufficient averments to satisfy the requirements that the magistrate have probable cause to issue the search warrant and we concur. After entering the vacated apartment the officers found a number of articles not described in the warrant such as a marked roadmap, rental receipt, an old British coin and a picture. The seizure of such items we find to be reasonable under the circumstances. The articles left in the apartment had evidently been abandoned by the defendant who had left the premises without notice and without paying the rent for another month. The landlady testified that she had observed the defendant leave sometime before the end of October and that notes left reminding the occupants that the rent was past due went unheeded. Under these circumstances and in absence of any proof that the defendant intended to return to the apartment evidently permanently vacated, the right against invasion of the property would seem to have been lost and the assignments of error relative to the introduction of the evidence are overruled. "[T]he seizure of an article abandoned by one accused of crime does not violate the constitutional guaranty." 79 C.J.S. Searches and Seizures § 61.

Another assignment of error is overruled wherein it is contended by Graves that the court unduly restricted the right of cross examination when it refused to allow counsel to inquire as to whether or not any criminal charges were at the time pending against a witness for the State. Although it is competent for the purposes of impeachment to prove that a witness has been convicted of a crime involving moral turpitude, the fact that a witness has been merely charged with a crime is not admissible evidence as to his credibility since innocent persons are often arrested and charged with a criminal offense. See Pearson v. United States, 6 Cir., 192 F.2d 681.

Graves contends that the testimony of the medical examiner to the effect that the victim in his opinion died from trauma to the head and manual strangulation was prejudicial to her. Undoubtedly such testimony was damaging to the defendants in this case, but there is no showing that the opinion was not based upon sound medical observation from a competently qualified physician and as such it was admissible.

The trial judge fully and correctly charged the jury that in order to convict the defendants on the testimony of an accomplice there must be independent evidence in the case to corroborate such testimony tending to show the commission of the crime and that the defendants committed it and that such proof should be carefully scrutinized. It was not error for him to deny a special request to the same effect since that which was requested had been adequately covered in the charge. See Bostick v. State, 210 Tenn. 620, 360 S.W.2d 472.

A contention urged upon us in Graves' brief to the effect that the State failed to prosecute another person she claims the proof implicated in the crime was not made a ground in the motion for a new trial and thus cannot be considered here. Rule 14(5). See also Hobbs v. State, 121 Tenn. 413, 118 S.W. 262. Be that as it may, we fail to see how one accused of a crime can be adversely affected by the inability of the State to apprehend and prosecute someone else implicated in the crime.

A complaint made by Graves that a State investigator talked to a prospective juror is without merit in the absence of any proof of a detrimental effect to her or that such conversation had any connection with the case. Inasmuch as the prospective juror it is alleged the investigator engaged in conversation prior to trial was not seated as a juror, it is difficult to see how such a result can be supported. Since it was not, the assignment must be overruled.

■ Error is assigned to the court's ruling that the defendant Graves should present any proof she had to offer before the defendant Callaway. Mrs. Graves was listed first on the indictment and declined to take the stand because when the defense opened it had not yet been decided that she would be a witness. It was contended that further investigation as to the importance of the alleged witness Holcomb, whom neither the police nor the defense ever located, was needful before a determination could be made as to whether the defendant Graves would be a witness or not. We are aware that the legality of the rule in Tennessee that a defendant must testify before other witnesses for the defense may be called is presently under consideration by the United States Supreme Court in the case of Brooks v. Tennessee, 10 CrL 4233. Regardless of the outcome of that case, it would seem clear that before a conviction could be set aside for failure to allow a defendant to testify out of turn that the defendant should at least make a request to do so before all the proof is closed. This was not done although the trial judge advised the attorney for Mrs. Graves that he would consider re-opening either defendant's case for the purpose of additional testimony. This assignment is overruled.

■ An objection was made to the introduction as an exhibit of an old British coin found by the investigating officers in the victim's home. An assignment of error urges that this evidence was not relevant. Inasmuch as a similar old coin was found in the apartment of the defendant Graves we feel, as did the trial judge, that this circumstantial evidence had some degree of relevancy when considered together with all the other proof. The assignment is overruled.

It is finally generally alleged that the entire proceeding was prejudicial to the defendant Graves and calculated to deprive her of the right to a fair trial. An exhaustive consideration of all the record fails to indicate that either of the defendants failed to receive a fair and impartial trial.

The judgments are affirmed.

MITCHELL and O'BRIEN, JJ., concur.

OPINION ON PETITION TO REHEAR

GALBREATH, Judge.

We have for disposition the earnest and forceful petition to rehear filed on behalf of plaintiff in error, Delthia Graves.

We have by our former opinion considered at length all of the contentions made except that urged as a result of the District Attorney General's office recommending subsequent to the trial of this cause that the first degree murder indictment against its primary witness, Carol Ann Robbins, a co-defendant whose trial was severed from those of the other two principals, Mrs. Graves and Gilbert Lawrence Callaway, be nolle prosequied.

We are presented with the transcript of the proceeding in which the nolle prosequi was moved for by the State and ordered by the court and have carefully considered it in light of the suggestion made in the petition to rehear that Mrs. Robbins' testimony was unduly influenced by the prospect of a voluntary abandonment of the strong case against her by the State. We are cited the recent decision of the United States Supreme Court of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed. 2d 104, in which a felony conviction was reversed when it was admitted by a United States attorney that the witness co-defendant "would definitely be prosecuted if he did not testify and that if he did testify he would be obliged to rely on the 'good judgment and the conscience of the government' as to whether he would be prosecuted." This threat coupled with a thinly veiled promise of a reward prompted the United States Supreme Court, in remanding for a new trial, to observe, " . . . evidence

of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it."

■■ While recognizing the correctness of the holding of the United States Supreme Court to the effect that any agreement entered into between the prosecution and a witness that could conceivably influence his testimony should be divulged to the defense and the trier of fact, we find no factual similarity between the situation confronted in *Giglio* and here. There is no showing here that any promise, threat, or other coercive device was used by the State to prompt Mrs. Robbins to testify as to what she observed surrounding the death of the victim or her own part in the crime. In our opinion we discussed at length the cross examination of the witness on this point. "[S]he was repeatedly asked if any promises had been made to her by the prosecution to solicit her testimony. She repeatedly denied that she had been granted any concessions or promised anything for her testimony but was motivated only by a desire to tell the truth since her attorney had advised her that was the best course for her to follow." That this was good advice and such as should be encouraged on the part of all who find themselves accused of crime and in grave danger of conviction was amply demonstrated by the later concession granted her for her cooperation with society in the serious business of the detection and conviction of those who commit crime and attempt to evade justice. It is generally recognized that a humble, contrite, and conscientious repentent who "throws himself upon the mercy of the court" usually fares much better than does the adamant accused who is adjudged guilty after a lengthy trial. While one indicted for crime in the position of cooperating with the government should not be threatened or assured the court will grant favored treatment in return for his assistance, there is no proscription against his hoping that his valuable help will result in leniency.

One would be naive not to recognize that grateful prosecution authorities often seek to help those who cooperate by giving them information and in acknowledging guilt. From the days of our lice infested ancestors until the end of time there is little likelihood of repeal of one of the first laws of nature, "You scratch my back and I will scratch yours."

■ Of course, the trial judge should not enter into or be bound by any decision made by the prosecution to recommend leniency in return for cooperation by one of several accused of crime in securing convictions in contested trials, but all connected with the practice of criminal law know that such recommendations, as in plea bargaining, carry a great weight with most judges, particularly those without adequate probationary investigative staffs who must rely in large measure on information imparted by the attorneys representing the respective parties.

The trial judge, in commenting on the recommendations of the District Attorney General's office, satisfied himself that this was a proper case in which to agree with such recommendation. Whether he was right is not before us, but the record makes clear that there was no promise of reward made to the witness who was at all times advised by her own attorneys that her decision to cooperate was correct. Finding nothing improper in the dealings of the prosecuting authority with this witness, we overrule the petition to rehear.

MITCHELL and O'BRIEN, JJ., concur.