IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2001

**STATE OF TENNESSEE v. RICHARD HIGGS**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 97-03618, 03619      Carolyn Wade Blackett, Judge**

_____

**No. W2000-02588-CCA-MR3-CD - Filed August 5, 2002**

_____

A Shelby County jury convicted the Defendant of aggravated robbery and evading arrest. After a hearing, the trial court sentenced the Defendant as a Range I standard offender to eleven years in the Department of Correction for the aggravated robbery conviction, and as a Range III persistent offender to six years in the Department of Correction for the evading arrest conviction. The sentences were ordered to be served consecutively. In this direct appeal, the Defendant contends that the trial court erred in denying his lawyer's motions to withdraw; that the trial court erred in admitting a prior inconsistent statement by a co-defendant; and that the evidence is not sufficient to sustain his convictions. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Robert Little (on appeal); and Peggy Short-Bohannon, Memphis, Tennessee (at trial), for the Appellant, Richard Higgs.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and James M. Lammey, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On the night of November 11, 1996, Roy Cornelious and Leroy Brown robbed a Mapco in Memphis. Brown carried a handgun during the robbery and pointed it at the two employees who were in the store at the time. After the robbery, the two men left the store and got into the

Defendant's white pick-up truck, which the Defendant was driving. A high speed chase by police officers ensued, with the police officers eventually capturing all three men.

Cornelious testified that he and Brown went by the Defendant's house prior to the robbery and that Brown told the Defendant that he needed to borrow the Defendant's pistol. The Defendant gave the pistol to Brown and asked him what it was for. Brown responded that he and Cornelious needed it to get some money. The Defendant then stated that he was going with them.

Cornelious testified that the three men left in the Defendant's white pick-up truck and drove around. Eventually the Defendant drove them to the Mapco and indicated that it was the place to rob. Cornelious and Brown left the truck and entered the store, robbed it, and left. According to Cornelious, the Defendant was supposed to stay where he had parked to let the men out, but moved while the men were in the store. Cornelious and Brown began running up the street, and the Defendant drove up and honked. The two men got into the truck, and the chase commenced a short time later. Cornelious stated that they came to a stop when the oil pan was knocked off the truck. Cornelious pled guilty to aggravated robbery and evading arrest. He denied that anyone had forced the Defendant to participate in the events. He admitted on cross-examination, however, that he did not identify the Defendant to the police while giving his statement the next day.

Michael Arwood was sitting in his car in the Mapco parking lot and saw the two men rob the store. When the two robbers left the store, he followed them in his car. Arwood stated that while he followed the men, he saw a white pick-up sitting in a nearby parking lot with one door open. He

could not tell if anyone was inside the truck. Arwood testified that the two robbers ran in the direction of the truck, but he "chased them down, to keep them from getting there." He eventually returned to the Mapco and reported what he had seen to the police. He did not see the men enter the white pick-up.

Officer Jeff Tow was one of the officers who participated in the high speed chase. He explained that his siren and blue lights were activated to signal the driver to stop. He testified that the chase lasted approximately ten minutes. Eventually, the white truck became disabled and came to a stop. Three men left the truck and ran. Officer Tow chased down the driver. Officer Tow identified the Defendant at trial as the driver of the white pick-up truck. Officer Tow indicated that the Defendant was less than cooperative during the arrest.

Officer Richard Morrow also participated in the chase and captured Leroy Brown after the three men left the pick-up. He testified that Leroy Brown had a pistol and the proceeds of the robbery in his hand. Officer Morrow confirmed the use of blue lights and siren.

Leroy Brown testified on behalf of the Defendant that he and Cornelious robbed the Mapco with a pistol that Brown had had for a month or two. He stated that they paid someone five dollars to drive them to the Mapco. After the robbery, Brown flagged the Defendant down and told him to drive. Brown testified that he told the Defendant that "[i]f he stopped, [he] would do something to him." Brown testified that the Defendant knew Brown had the gun. He also stated that he did not know the Defendant before that night. Brown pled guilty to aggravated robbery and evading arrest.

-3-

On cross-examination, Brown admitted that he had testified similarly to Cornelious at his guilty plea hearing. He stated that he had been lying at his plea hearing in order to avoid trouble in jail. He stated that he was telling the truth at trial. On redirect, Brown acknowledged that his trial testimony was consistent with the statement he gave the police on November 12, 1996.

## MOTIONS TO WITHDRAW

The Defendant asserts that the trial court erred when it denied his lawyer's motions to withdraw. Defense counsel, a private attorney, was initially appointed to represent the Defendant on May 7, 1997, on the bases that the Defendant was "financially unable to employ counsel" and that "the Public Defender of Shelby County, Tennessee, should not be appointed to represent the Defendant . . . for good cause shown." Although the record contains no judicial findings as to the "good cause," the Defendant asserts that the Public Defender's Office could not represent him because it was representing one of his co-defendants.[1]

Counsel initially filed a motion to withdraw on March 10, 1998, alleging, inter alia, that the Defendant had filed a complaint against her with the Board of Professional Responsibility. The trial court denied the motion after "having . . . heard and fully considered" it. The record does not contain the trial court's reasons for denying the motion.

---

[1] At the motion for new trial, Ms. Short-Bohannon stated to the trial court that she argued the second motion to withdraw on the basis that there was a conflict of interest since she was, at that time, a member of the Public Defender's office. In response to this statement, the State argued that by the time defense counsel had accepted employment with the Public Defender's Office, the co-defendant had pled guilty, and, therefore, any conflict had been resolved. The record contains no other "proof" of the alleged conflict of interest.

Counsel filed another motion to withdraw on October 5, 1998, the morning of trial. By this time, the Defendant had filed three complaints against counsel and she represented in her motion that the Defendant "clearly does not want [her] to represent him" and that the Defendant's actions were rendering it "increasingly unreasonably difficult to effectively represent" the Defendant. Counsel cited Tennessee Supreme Court Rule 8, DR 2-110(B)[2] and DR 2-110(C)(1)(d)[3] as authority for her motion. Although the record does not contain the trial court's ruling on this motion, counsel's comments at the motion for new trial indicate it was denied because the trial court found no conflict of interest.

Our supreme court has acknowledged that "a trial judge may, upon good cause shown, permit the withdrawal of an attorney appointed to represent an indigent defendant in a criminal case." State v. Branam, 855 S.W.2d 563, 566 (Tenn. 1993); see also Tenn. Code Ann. § 40-14-205(a). However, the trial court has wide discretion in matters regarding the withdrawal of counsel, and its decision will not be set aside unless a plain abuse of that discretion is shown. Branam, 855 S.W.2d at 566.

The Defendant asserts on appeal that the trial court abused its discretion in denying defense counsel's motions because he discharged her and she was therefore required to withdraw. See Tenn. Sup. Ct. R. 8, DR 2-110(B)(4). Additionally, he contends, the trial court should have granted the withdrawal because defense counsel had a conflict of interest. In support of this allegation, he states

[2]This portion of the Code of Professional Responsibility provides for several grounds upon which a lawyer is required to seek withdrawal from employment.

[3]This portion of the Code of Professional Responsibility provides that a lawyer may request permission to withdraw when the client "renders it unreasonably difficult for the lawyer to carry out the employment effectively."

that, at the time of his trial, his defense lawyer had accepted employment with the Public Defender's Office, which the trial court had earlier found should not be appointed to represent the Defendant.

We first note that the record does not contain a transcript of either hearing on defense counsel's two motions to withdraw. For that reason, it is impossible for this Court to determine the bases for the trial court's rulings. "When the record is incomplete and does not contain a transcript of the proceedings relevant to the issue presented for review, the appellate court is precluded from considering the issue. Instead, the appellate court must conclusively presume the ruling of the trial court on the motion was correct." State v. Griffis, 964 S.W.2d 577, 592-93 (Tenn. Crim. App. 1997) (footnotes omitted).

Moreover, we disagree with the Defendant that counsel's withdrawal was "required" on the basis that he "discharged" her. When defense counsel is appointed, permission of the court is necessary prior to his or her withdrawal. See Tenn. Code Ann. § 40-14-205(a); see also Zagorski v. State, 983 S.W.2d 654, 660 (Tenn. 1998). Indeed, even if defense counsel is retained, a criminal defendant must seek the trial court's permission prior to discharging him or her. See State v. Gilmore, 823 S.W.2d 566, 568-69 (Tenn. Crim. App. 1991). Thus, the trial court did not necessarily abuse its discretion in refusing to allow the Defendant's lawyer to withdraw on the basis that the Defendant "discharged" her. And, without any indication in the record as to why the trial court refused permission for counsel to withdraw, the Defendant has failed to establish that the trial court thereby abused its discretion. Furthermore, the Defendant has not provided this Court with sufficient information to determine that there existed a conflict of interest requiring defense counsel's

-6-

withdrawal. Accordingly, the Defendant has shown no abuse of discretion in the trial court's refusal to allow counsel's withdrawal on that basis, either. See Branam, 855 S.W.2d at 566 (stating that where record contains only vague allegations of a conflict and defendant does not establish an actual conflict resulting in prejudice to his or her counsel's performance, no abuse of discretion requiring reversal is demonstrated). In short, the Defendant has not demonstrated that the trial court abused its discretion in denying his trial lawyer's motions to withdraw, and this issue is therefore without merit.

## ADMISSION OF CO-DEFENDANT'S STATEMENT

Prior to testifying, Leroy Brown met with the prosecutor and answered some questions. The prosecutor taped this conversation. During cross-examination, the prosecutor asked Brown, "[d]id you, or did you not, say in the back that the reason why you [told the police that you threatened the Defendant into driving you] is because you talked it over with [the Defendant] and he was supposed to make your bond?" Brown responded, "No, sir." The prosecutor again asked, "You did not say that?" Brown again responded, "No, sir." At that point, the prosecutor indicated to the court that he wanted to play that portion of the taped conversation in which, apparently, Brown answered as indicated by the prosecutor.[4] Defense counsel objected on the basis that the statement was hearsay,[5] to which the prosecutor responded that he was introducing the tape for impeachment purposes, as

---

[4]The record contains neither a copy of the audiotape, nor a transcript of the portion played for the jury.

[5]"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay statements are generally inadmissible as substantive evidence. See Tenn. R. Evid. 802.

a prior inconsistent statement. A portion of the tape was subsequently played for the jury. The Defendant now asserts that reversible error occurred because the trial court did not instruct the jury that the tape was being played for impeachment purposes only.

Tennessee Rule of Evidence 613(b) provides that extrinsic evidence of a prior inconsistent statement by a witness is admissible so long as the witness is afforded an opportunity to explain or to deny the prior statement, and the opposite party is given an opportunity to question the witness about the prior statement. Here, the requirements for admissibility of the prior statement were met. Because the prior statement is hearsay, however, its admissibility is limited to its impeaching effect on the witness's credibility; it should not be relied upon as substantive evidence of the accused's guilt or innocence. See generally State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). Thus, upon request, the trial court must instruct the jury that the prior inconsistent statement should be considered only as it reflects upon the witness's credibility. Id; see also Tenn. R. Evid. 105 ("When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly.") (emphasis added). Where no request is made, the evidence may be considered "as if it were, in fact, fully admissible under the law of evidence." Smith, 24 S.W.3d at 280.

Here, defense counsel objected to the admissibility of the prior inconsistent statement, but, upon the court allowing the tape to be played, did not request a limiting instruction. Accordingly, the Defendant will not now be heard to complain. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to

take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). This issue is without merit.

## SUFFICIENCY OF THE EVIDENCE

Finally, the Defendant contends that the evidence is not sufficient to sustain his convictions. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs,

995 S.W.2d at 105.  Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment.  Tuggle, 639 S.W.2d at 914.  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts.  See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

In his challenge to the sufficiency of the evidence, the Defendant specifically contends that there is not sufficient evidence to corroborate the testimony of his accomplice, Roy Cornelious.  A criminal defendant in Tennessee may not be convicted solely on the basis of an accomplice's testimony.  See State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994).  Rather,

> [t]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity.  This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged.  It is not necessary that the corroboration extend to every part of the accomplice's evidence.  The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

Id. (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)).

Here, the Defendant was convicted of aggravated robbery and evading arrest. An aggravated robbery is an intentional or knowing theft of property from the person of another by violence or by putting the person in fear, accomplished with a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1). An accused is criminally responsible for an offense committed by others if, "acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the [accused] solicits, directs, aids, or attempts to aid another person to commit the offense." See id. § 39-11-402(2). A person evades arrest when he or she, "while operating a motor vehicle on any street, road, alley or highway, intentionally flee[s] or attempt[s] to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." See id. § 39-16-603(b)(1).

Here, accomplice testimony established that the Defendant provided the gun used in the aggravated robbery; chose the business to rob; and drove the getaway vehicle. Independent testimony from Michael Arwood established that the getaway truck was parked near the Mapco, with one door open, at the time of the robbery. Arwood also testified that the two robbers ran in the direction of this truck, but that he prevented them from reaching it. Independent testimony from two police officers established that the Defendant drove the getaway truck. This is sufficient independent, albeit circumstantial, proof that the Defendant willingly participated in the aggravated robbery and that he chose to drive in such a fashion as to evade arrest. Accordingly, the evidence is sufficient to sustain the Defendant's convictions, and this issue is without merit.[6]

---

[6]We note that, although the record does not contain a transcript of the trial court's actual charge to the jury, it does contain the written charge presumably read by the court to the jury. This written charge does not contain an

(continued...)

-11-

The judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[6](...continued)
instruction regarding the rule requiring corroboration of accomplice testimony. This issue has not been raised by the Defendant in this appeal, however, and has therefore been waived. Moreover, defense counsel did not request this instruction at trial, and the omission does not, therefore, constitute error. See State v. Anderson, 985 S.W.2d 9, 17 (Tenn. Crim. App. 1997).