**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**NOVEMBER SESSION, 1998**

FILED

February 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9710-CC-00455** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **RHEA COUNTY** |
| **VS.** | ) | |
| | ) | **HON. J. CURTIS SMITH,** |
| **ROBERT GILLESPIE,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Aggravated Assault) |

ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF RHEA COUNTY

FOR THE APPELLANT:

EDWARD L. BORING
P.O. Box 1025
Pikeville, TN 37367

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL J. FAHEY, II
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

J. MICHAEL TAYLOR
District Attorney General

JAMES W. POPE, III
Assistant District Attorney General
First American Bank Bldg., Suite 300
Dayton, TN 37321

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Robert Gillespie, pursuant to Tennessee Rule of Appellate Procedure 3(b), appeals as of right his conviction for the aggravated assault of Charles Mears, his wife's uncle. Defendant was convicted after a jury trial, and he was sentenced to four years and six months, with ninety days to be served in the county jail and the remainder to be served on supervised probation. We affirm the judgment of the trial court.

Defendant challenges only the sufficiency of the evidence to convict him. At the time of this offense, Defendant was engaged to his present wife, and the couple attended her mother's funeral. Mears, the victim, had apparently warned Defendant to stay away from the funeral; and when he saw Defendant there, he assaulted Defendant, causing him to flee toward his car. When Defendant reached his car, he did not leave, but instead retrieved a gun and held it up in the parking lot among a gathering of funeral guests. Another guest obtained the gun from Defendant, who fled on foot until captured. It is undisputed that Mears initially committed an assault upon Defendant. The issue for resolution by this Court is whether the evidence was sufficient to support Defendant's aggravated assault conviction or, stated differently, whether Defendant adequately proved self-defense so as to render the jury's verdict untenable.

At trial the State first presented Charles Mears. Mears admitted that he cursed and struck Defendant after asking him at least twice to leave the funeral parlor. Mears testified that he then followed Defendant outside to the parking lot,

where Defendant "pulled a gun" on him and threatened to kill him. According to Mears, Defendant pointed the gun at him for approximately two minutes with his finger on the trigger. In addition, Defendant "chambered" a round, which ejected into the air over a parked car.

On cross-examination Mears acknowledged his intent to assault Defendant further if he did not leave the premises. When asked whether Defendant hit him, Mears stated that he "got hit," but he did not know whether Defendant hit him. Mears never expressed that he feared bodily injury, but he stated, "When a man's got a gun on you pointing straight at you, you don't count the seconds or the minutes. You don't look to see where the other people is [sic] at." Mears also agreed that Defendant "had the potential to squeeze the trigger and shoot [him]."

The State next called Larry Wolcott to testify, who recounted that he saw Defendant point the gun at Mears, heard the "click" of the ejected round from the gun and Defendant's threat to kill Mears, ran around the crowd and cars in the parking lot, and seized the gun from Defendant's hand. He struck Defendant's forehead with the gun, and Defendant then fled the scene. Wolcott estimated that Defendant had held the gun for approximately thirty to forty seconds. On cross-examination, Defendant impeached Wolcott with his testimony from the preliminary hearing, during which he was asked whether he heard Defendant threaten Mears, and he responded, "No. There was too much noise going on out there to start with." On rebuttal, the State called Diane Wolcott, Larry Wolcott's wife, who testified consistently with her husband's statements.

Defendant testified on his own behalf, describing how Mears ordered him to leave the funeral home, saying, "Get your black ass up," struck his then-fiancée, and then struck him two or three times on the side of his face and head. According to Defendant, he and his fiancée attempted to get into their car when Mears began to beat Defendant again. For this reason, Defendant removed from behind the seats a .22 caliber pistol that he had not before seen, and he held it "down beside" him for protection against the several men who descended upon him. He denied pointing the gun at anyone. Defendant testified that the car he drove belonged to his brother and that the gun had not been in the car when he drove to the funeral.

Jennifer Gillespie, Defendant's wife and Mears's niece, affirmed Defendant's testimony. She stated that Mears "hit [her] and knocked [her] out of the way and started hitting Robert," then "chased him out of the funeral home." She recalled Mears threatening to kill Defendant and calling him a "nigger." According to Ms. Gillespie, both Mears and Larry Wolcott hit Defendant "constantly," and they chased him out to his car. She denied that Defendant pointed the gun at anyone, stating that he held it by his side and that Wolcott obtained it and began to hit him over the head with it.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt." Tenn. R. App. P. 13(e). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the

evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

"A person commits an aggravated assault who . . . [i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [u]ses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(B). "A person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury; or . . . [i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Id. § 39-13-101(a)(2)-(3). Tennessee Code Annotated defines self-defense as follows:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death

-5-

or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Id. § 39-11-611(a).

This case involves a conflict of testimony regarding the events which occurred at Defendant's car. Mears stated that he "got hit" during the altercation, although he did not know whether Defendant hit him. According to Mears, Larry Wolcott, and Diane Wolcott, Defendant pointed a gun at Mears and "chambered" a round of ammunition. Mears and Larry Wolcott testified that Defendant threatened to kill Mears while he pointed the gun. Although Mears admitted that he would have continued to beat Defendant had Defendant refused to leave the premises, he testified that he did not strike Defendant in the parking lot. Furthermore, Mears stated that he "followed" Defendant outside, "walk[ing] out there where he was getting into the car." Mears believed that Defendant had the potential to shoot him from a short distance.

According to Defendant and his wife, Mears and several other men "chased" him out of the funeral home and to his car, continuously striking him until the time he displayed the gun, which he claimed he held at his side. Decisions regarding whether Defendant committed aggravated assault and whether his actions constituted defense of his life must be made by the trier of fact—in this case, the jury. The jury found that Defendant did indeed commit an aggravated assault and that he was not justified by self-defense. We conclude that the jury was within its purview to accredit the State's witnesses and determine (1) that Mears reasonably feared for his life while Defendant held a

gun pointed at him, and (2) that Defendant was not justified by a reasonable belief of an imminent danger of death or serious bodily injury to himself.

We affirm Defendant's conviction and sentence for aggravated assault.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JAMES CURWOOD WITT, JR., JUDGE

_____
L.T. LAFFERTY, SENIOR JUDGE