IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2001

**STATE OF TENNESSEE v. GEORGE REDD**

**Appeal from the Criminal Court for Shelby County**
**No. 99-11458      Joseph B. Dailey, Judge**

---

**No. W2000-01620-CCA-R3-CD  - Filed August 9, 2001**

---

Following a jury trial, the Defendant, George Redd, was convicted of burglary.  He was sentenced as a career offender to twelve years incarceration.  In this appeal as of right, the Defendant asserts that the evidence presented at trial was insufficient to support his conviction and that the trial court erred by failing to instruct the jury on the lesser included offenses of burglary.  We hold that the evidence was sufficient to support the Defendant's conviction but that the trial court erred by failing to instruct the jury on the lesser included offenses of burglary.  Because we conclude that the error was harmless beyond a reasonable doubt, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN, J., and L.T. LAFFERTY, SR.J., joined.

John Finklea, Murray, Kentucky, for the appellant, George Redd.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dan Byer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At trial, Henry Lee Underwood testified that on May 12, 1999, he was working as a security officer responsible for patrolling several businesses in a Memphis neighborhood.  One such business was Albert's Market.  Mr. Underwood stated that while on patrol, he saw two men walking down the street in front of Albert's Market.  Mr. Underwood thought that the two men were acting "suspicious," so he turned around to observe them.  However, when he turned around, the men had disappeared.  Mr. Underwood believed that for the men to have disappeared in that short length of time, they had to have either gone inside or on top of the building.

Because of this activity, Mr. Underwood called the police on his cellular telephone. He said that the police arrived within three to seven minutes after his phone call. While waiting for the police, Mr. Underwood watched the building to ensure that no one left. Once the police arrived, Mr. Underwood showed them how to get on top of the roof. He described the building, which was a "stand-alone" building, about twelve feet tall, with a shorter storage shed attached to one side. The storage shed was only about eight feet tall, and a person could gain access to the roof by climbing on top of the storage shed and then climbing on top of the roof. Mr. Underwood also described a hole in the roof through which access could be gained to the inside of the market.

Mr. Underwood testified that the police took two men into custody that night. He identified the Defendant as one of the two men arrested at Albert's Market. Mr. Underwood further testified that a bottle of mouthwash and a cup of soup were recovered from the two men; Mr. Underwood compared the items to the types of items on the store shelves and concluded that the items matched those sold at the store.

Millie Strong testified that she was the owner of Albert's Market, which was a supermarket and deli. She closed the store in October of 1997, but she left the merchandise inside because she had planned to reopen the store. On May 12, 1999, she received a call to come to the store. When she arrived, she unlocked the door and let the police inside. Ms. Strong testified that the police showed her some items that had been taken from the two men they had arrested, and Ms. Strong identified those items as being items like she had on the shelves in the store. She said that she did not have stickers or other identifying marks on the merchandise indicating that it came from Albert's Market.

Officer Richard Strouser of the Memphis Police Department was the first police officer to arrive on the scene. He testified that as he drove in front of the store, he looked through the window and observed a black male inside the store. Officer Strouser advised "dispatch" that someone was inside the store, and then when Officer Strouser again looked inside, the man was gone. Officer Strouser waited in front of the store until the other officers arrived. Later, when someone arrived with a key to the store, Officer Strouser searched the inside of the store with his police dog. He found no one inside at that time.

Officer Patrick Twilley also responded to the scene that night. He testified that upon arrival, he and the other officers set up a perimeter around the building so that no one could leave. He and Officer Oliver then went up on the roof. Officer Twilley testified that they gained access to the roof by way of a storage shed which was attached to the building. He explained that there were crates and boxes by the shed, which was about eight feet tall, and the officers were able to climb on the crates and boxes and then climb on top of the shed. The roof of the building was then an additional five feet from the top of the shed, but the officers were able to climb it as well. Once on top of the roof, the officers discovered a hole in the roof leading to the inside of the store. While searching the roof, Officer Twilley observed a pair of shoes sticking out of a stripped-out air-conditioning unit. Upon further investigation, Officer Twilley discovered a person hiding in the air-conditioner. Officer Twilley took the person into custody and subsequently found an unopened three and a half

ounce bottle of Scope mouthwash in the person's possession. Officer Oliver found another person on top of the roof and took that person into custody. Officer Twilley was present when the other person was searched, and he testified that a can of beef stew was recovered from that person.

Officer James Oliver searched the roof with Officer Twilley. He testified that he found the Defendant hiding on the roof. He identified the Defendant in court as the person whom he found that night. Officer Oliver testified that the Defendant was laying face-down in the corner of the wall around the roof. He said that it appeared as though the Defendant was trying to make himself as small as possible. Officer Oliver took the Defendant into custody and subsequently found an unopened can of stew in the Defendant's possession. Officer Oliver showed the item to Ms. Strong, who said that it was like items which she had sold in the store.

## SUFFICIENCY OF THE EVIDENCE

The Defendant first challenges the sufficiency of the convicting evidence. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

A person commits the offense of burglary "who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(1). The indictment in this case specifically charged that the Defendant and his co-defendant entered Albert's Supermarket with the intent to commit a theft. Additionally, the jury was instructed on criminal responsibility, which provides that "[a] person is criminally responsible for an offense committed

by the conduct of another if . . . [a]cting with intent to promote or assist the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Id. § 39-11-402.

The evidence in this case established that two men were seen by Mr. Underwood in front of Albert's Market. The men quickly disappeared, so Mr. Underwood called the police and watched the market to ensure that nobody left. The police arrived within three to seven minutes and established a perimeter around the building so that nobody could escape. One officer saw a black male inside the market. The police then found the Defendant and another black male hiding on the roof of the market. Each was in possession of an item that was similar to other items sold in the market. There was a hole in the roof through which access to the market could be gained. Based on this evidence, we conclude that a rational jury could have found beyond a reasonable doubt that the Defendant either entered Albert's Market with the intent to commit a theft or that he was criminally responsible for the conduct of his co-defendant who entered Albert's Market with the intent to commit theft. Accordingly, we hold that the evidence was sufficient to support the conviction. See State v. Lemacks, 996 S.W.2d 166, 168 (Tenn. 1999) (holding that "jury instruction and general verdict satisfied the due process requirement of jury unanimity even though the appellee could have been convicted . . . either based upon his own commission of the offense or by criminal responsibility for [another's] commission of the offense").

## LESSER INCLUDED OFFENSES

The Defendant next argues that the trial court erred by failing to instruct the jury on lesser included offenses of burglary. Specifically, the Defendant argues that the trial court should have instructed the jury on attempted burglary, facilitation of burglary, and criminal trespass.

In State v. Burns, 6 S.W.3d 453 (Tenn. 1999), our supreme court adopted a new three-part test for determining whether an offense is a lesser included offense. See id. at 466-67. Under the Burns test, an offense is a lesser included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. Under part (c) of this test, attempted burglary and facilitation of burglary are clearly lesser included offenses of burglary. We also conclude that criminal trespass is a lesser included offense under part (b) of this test.

A person commits the offense of criminal trespass "who, knowing the person does not have the owner's effective consent to do so, enters or remains on property, or a portion thereof." Tenn. Code Ann. § 39-14-405(b). Thus, the elements of criminal trespass are (1) the defendant enters or remains on property; (2) the defendant does not have the owner's effective consent; and (3) the defendant knows that he or she does not have the owner's effective consent. The elements of burglary applicable to this case are (1) the defendant enters a building not open to the public or remains concealed in a building; (2) the defendant does not have the owner's effective consent; and (3) the defendant has the intent to commit a felony, theft or assault. See id. § 39-14-402(a). Because criminal trespass contains the additional element that the defendant must know that he or she does not have the owner's effective consent to enter or remain and because criminal trespass criminalizes the intrusion of the defendant onto property, as opposed to a building, it does not meet the statutory elements test outlined in part (a) of Burns. See Burns, 6 S.W.3d at 466. However, it does meet part (b) of the Burns test because the additional elements establish a different mental state indicating a lesser kind of culpability and establish a less serious harm or risk of harm to the same person, property, or public interest. See id. at 466-67. Although the defendant must know that he or she does not have the owner's effective consent to enter or remain on property, there is no requirement that the defendant intend to commit a felony, theft, or assault while on the property; thus, the different mental state for the entry or remaining indicates a lesser kind of culpability for the defendant. See State v. Ely, __ S.W.3d __, __ (Tenn. 2001) (explaining that the requirement for a different mental state does not necessarily mean a less culpable mental state, but merely a lesser kind of culpability overall). Also, the element of criminal trespass that the defendant must enter or remain on property, rather than a building, is a less serious harm or risk or harm to the same property owner because there is no requirement that the defendant actually enter a building on the property.

Having found that attempted burglary, facilitation of burglary, and criminal trespass are lesser included offenses of burglary, we must now determine whether it was error to not instruct the jury on those offenses. A trial court is under the mandatory duty to instruct the jury on a lesser included offense, even if such an instruction is not requested, when "any evidence exists that reasonable minds could accept as to the lesser-included offense" and when that evidence is "legally sufficient to support a conviction for the lesser-included offense." Burns, 6 S.W.3d at 469; see also Tenn. Code Ann. § 40-18-110(a). In determining whether any evidence exists that reasonable minds could accept as to the lesser offense, the courts "must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence." Burns, 6 S.W.2d at 469. Whether the trial judge erred in this case by failing to charge the lesser included offenses appears to us to be a close call. However, viewing the evidence in the light most favorable to the existence of the lesser included offenses and without making any judgments concerning the credibility of such evidence, we conclude that it was error not to allow the jury to consider the Defendant's guilt of the lesser included offenses.

A person commits criminal attempt when that person, acting with the culpability required for the offense, "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3). The statute also provides that it is not a defense to prosecution for criminal attempt that the offense was in fact committed. See id. § 39-12-101(c). The proof established that two black males were seen outside Albert's Market, that one black male was seen inside Albert's Market, and that the Defendant and another black male were found on the roof of Albert's Market in possession of items similar to those on the shelves of Albert's Market. There was a hole in the roof through which access to the inside of the market could be gained. From this evidence, the jury could have determined that the Defendant climbed onto the roof of Albert's Market with the intent to enter Albert's Market and commit a theft. The Defendant's presence on the roof would constitute a substantial step towards the commission of the offense of burglary, whether or not he then entered the building or was criminally responsible for the conduct of the other black male who entered the building. "Whether sufficient evidence supports a conviction of the charged offense does not affect the trial court's duty to instruct on the lesser offense if evidence also supports a finding of guilt on the lesser offense." Burns, 6 S.W.3d at 472. Thus, we believe the trial court erred by failing to instruct the jury on attempted burglary.

"A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Id. § 39-11-403(a). Again, the proof established that two black males were found on the roof of Albert's Market, but only one black male was seen inside the market. The proof of the intent of the two males was established by purely circumstantial evidence. From the evidence presented, a reasonable jury could have concluded that the Defendant at least furnished substantial assistance to the other male, who intended to commit the offense of burglary at Albert's Market. Thus, we also believe the trial court erred by failing to instruct the jury on facilitation of burglary.

Finally, a person commits the offense of criminal trespass "who, knowing the person does not have the owner's effective consent to do so, enters or remains on property, or a portion thereof." Id. § 39-14-405(a). The proof clearly established that the Defendant entered the property on which Albert's Market was located. The Defendant's attempt to conceal himself on the roof of a privately owned building indicates his knowledge that he did not have the owner's effective consent to be on the property. Thus, a reasonable jury could have concluded that the Defendant knowingly entered the property of Albert's Market without the owner's effective consent, and the evidence would support such a conclusion. We believe it was error not to instruct the jury on the offense of criminal trespass.

Because of our finding that it was error for the trial court to not instruct the jury on the lesser included offenses of burglary, we must now determine whether the trial court's error requires reversal of the conviction and a remand for a new trial. In the recent case of State v. Ely, __ S.W.3d __ (Tenn. 2001), our supreme court held that the constitutional right to trial by jury "is violated when

the jury is not permitted to consider <u>all</u> offenses supported by the evidence." <u>Id.</u> at __. The court thus maintained that the proper inquiry for appellate courts in determining whether the failure to instruct the jury on a lesser included offense is reversible error is "whether the error is harmless beyond a reasonable doubt." <u>Id.</u> To find the error to be harmless, therefore, we must be able to conclude beyond a reasonable doubt that the jury in this case would not have found the Defendant guilty of one of the lesser included offenses, rather than the principal offense, if the jury had been given the opportunity to consider the lesser included offenses.

The Tennessee Criminal Pattern Jury Instructions provide that the following guidance be given to a jury concerning the meaning of a "reasonable doubt":

> Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a captious, possible or imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense.

Tennessee Pattern Jury Instruction - Criminal No. 2.03.

With this jury instruction as our guide, after examining all of the proof contained in this record, we find that our minds rest easily on the conclusion that the jury would have convicted the Defendant of burglary even had the jury been given the opportunity to consider the lesser included offenses of burglary. While we acknowledge that there is some possibility that a jury might have convicted the Defendant of a lesser included offense had the jury been given the opportunity, we note that a reasonable doubt does not mean a doubt that may arise from a possibility. <u>Hardin v. State</u>, 355 S.W.2d 105, 108 (Tenn. 1962). Absolute certainty on our part is not required. <u>Id.</u>

The evidence in this case, both direct and circumstantial, strongly points to the Defendant's guilt of burglary. Evidence which suggests that the Defendant's guilt was only of a lesser included offense to burglary is very slight. Based on our review of the entire record in this case, we conclude that the trial court's failure to instruct on the lesser included offenses was harmless beyond a reasonable doubt.

Accordingly, the judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

-7-