IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 19, 2002

## STATE OF TENNESSEE v. MICHAEL SHANE POWELL

**Appeal from the Criminal Court for Hamilton County**
**Nos. 226355 & 226437      Stephen M. Bevil, Judge**

---

**No. E2001-01544-CCA-R3-CD**
**July 9, 2002**

---

The Defendant, Michael Shane Powell, was convicted by a jury of first degree felony murder by aggravated child abuse, and aggravated child abuse. The trial court subsequently sentenced the Defendant to life imprisonment for the murder, and to a concurrent term of twenty years for the aggravated child abuse. In this direct appeal, the Defendant challenges the sufficiency of the evidence; the admission of proof of a prior alleged instance of child abuse; and the constitutionality of his dual convictions for felony murder by aggravated child abuse, and aggravated child abuse. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Lee Davis, Chattanooga, Tennessee, for the appellant, Michael Shane Powell.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Bill Cox, District Attorney General; and Barry Steelman and Christopher Poole, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On the night of January 8, 1999, the Defendant was home with his girlfriend, the victim's mother, and the victim, three-month-old Trevor Chase Holland. The baby was asleep in his carseat; the baby's mother was also asleep. When Trevor began crying, the Defendant removed him from his carseat and took him into the bedroom. The Defendant testified at trial about what next occurred:

> Anyway, he began to scream and I went into the bedroom, I
> tried to suffice him. I tried to give him a bottle, tried to comfort him.
> Nothing worked. He kept screaming. He kept screaming. And there
> was some napkins laying on a cabinet that I had in the bedroom and
> I picked one of them up and I wadded it up and that's when I put it in

his mouth, just to try to quieten him down, because I was just so frustrated with him for the last two nights not having any sleep. And I put the paper in his mouth. Never, never intentionally meaning to harm the child.

At that point, the Defendant testified, the baby stopped crying. The Defendant then tried to remove the paper, but "couldn't pull it out because [he] had pushed it in too far." He kept trying to scoop the paper out with his finger, he testified, but was unable to remove it. He then tried using the earpiece of a pair of sunglasses to remove the wad of paper. Unsuccessful, the Defendant called 911.

Upon reaching the 911 dispatcher, the Defendant stated, "Our little baby has got something hung in his throat and he can't breathe." When asked what the baby had in his throat, the Defendant stated, "I have no idea." Later in the call, the Defendant told the dispatcher "it looks like there's paper or something back in the back of his throat." The Defendant never told the dispatcher how the paper came to be in Trevor's throat.

Paramedic Ed Griffits was the first responder on the scene. When he arrived, the baby was not breathing and had no pulse. The Defendant made no effort to explain to Mr. Griffits what was obstructing the baby's airway. Mr. Griffits was unsuccessful in his attempt to intubate the baby, explaining that his throat "looked like hamburger meat." Mr. Griffits transported the baby to the hospital, where Dr. Ralph Smith took over Trevor's care.

Dr. Smith testified that, by the time the baby arrived in the emergency department, he "had been without oxygen for a significant period of time." Dr. Smith examined the baby's mouth but was unable to see the wad of paper because of its location. Dr. Smith intubated the baby but was unable to revive him. After pronouncing Trevor dead, Dr. Smith performed a "babygram," which is a full-length x-ray of the baby's body. In examining the x-ray, Dr. Smith discovered that Trevor's left femur (thigh bone) was fractured in multiple places. There was also a fracture to the left tibia (shinbone) near the ankle. Dr. Smith's diagnosis of Trevor's injuries included a finding of child abuse.

Dr. Marilyn Gay Murr Doyle performed the autopsy on Trevor. She described the cause of death as follows: "This three-month-old, white, male infant died as a result of a foreign body in the esophagus which compressed against the trachea causing suffocation and asphyxiation." Dr. Doyle testified that she removed a wad of paper measuring two and one-quarter inches by one and one-quarter inches by five-eighths inch from Trevor's esophagus. She further testified that a normal esophagus in a child of Trevor's size was approximately three-eighths inch by one-eighth inch. The wad of paper was located in the esophagus at a level below the child's Adam's apple, behind his windpipe. Dr. Doyle testified that the wad of paper was so large that it caused the esophagus to rip and rupture. She stated that it was impossible for the child to have gotten the paper that far into his throat by himself, and described the wad as having been "crammed" into the baby's esophagus. In her opinion, Trevor's death resulted from a homicide.

Dr. Doyle also testified about the broken femur, explaining that, in her opinion, the injury was no more than twenty-four hours old.

Dr. Deloris Rissling, a radiologist, testified that the fractures to Trevor's femur and tibia were no more than five days old, and probably less. She stated that there was no way the child could have caused these fractures to himself. She further opined that the fracture to the tibia was "characteristic of child abuse."

Detective Tommy Woods took two recorded statements from the Defendant, both of which were admitted at trial. In his first statement, taken several hours after Trevor's death, the Defendant denied having done anything injurious to the child, and speculated that the baby might have picked up some toilet paper that had been scattered by his older brother, and then placed it in his own mouth. After the autopsy, the Defendant explained in his second taped statement that he had used a few squares of toilet paper to wipe off the baby's gums, and that the paper had accidentally gotten into the baby's throat. Detective Woods also testified that the Defendant made another, unrecorded statement to him, in which the Defendant admitted placing toilet paper in Trevor's mouth in order to quiet him.

Dr. Steven Frank Dutton testified on behalf of the defense. Although he did not examine Trevor's body, he examined the autopsy report and the related photographs and x-rays. He agreed that Trevor died "because he had a paper napkin that was shoved down his throat," but stated that his findings were consistent with someone forcing something into the baby's mouth and then trying to remove it. In his opinion, the lacerations to the esophagus could have been caused by the earpiece of a pair of sunglasses used in an attempt to retrieve the wad of paper. Dr. Dutton further opined that the fracture to Trevor's femur was eleven to fifteen days old. On cross-examination, Dr. Dutton agreed with the prosecutor that forcing a napkin into Trevor's mouth constituted child abuse.

The Defendant first contends that the evidence is not sufficient to support his convictions. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-

weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

First degree felony murder is defined as the "killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." Tenn. Code Ann. § 39-13-202(a)(2) (emphasis added). Aggravated child abuse occurs when the accused knowingly, other than by accidental means, treats a child under the age of eighteen in such a manner as to inflict injury and the act of abuse results in serious bodily injury to the child. See id. § 39-15-402(a)(1). An accused acts "knowingly" with respect to his or her conduct "when [he or she] is aware of the nature of the conduct." Id. § 39-11-302(b).

The Defendant argues that "the State failed to offer sufficient evidence to disprove the Defendant's testimony that the fatal injuries to the child were incurred accidentally," and that "the act of placing the paper in the child's mouth was not done with a knowing intent to cause injury, therefore it did not meet the criteria of Aggravated Child Abuse." The Defendant misconstrues the elements of the crimes. First degree felony murder requires only the intent to commit the enumerated offense, in this case, aggravated child abuse. See Tenn. Code Ann. § 39-13-202(b). It is not necessary to be convicted of felony murder that the accused possessed the intent to inflict fatal injuries on the victim. Moreover, our supreme court has held that the "knowingly" element of aggravated child abuse "refers only to the conduct element[] of treatment " and does not refer to the result of the conduct. See State v. Ducker, 27 S.W.3d 889, 897 (Tenn. 2000). Thus, first degree felony murder and aggravated child abuse do not require that the accused was intentionally trying to kill or injure the victim. Rather, the accused must simply have engaged in the conduct by which the child was injured "knowingly, other than by accidental means." Tenn. Code Ann. § 39-15-401(a). The conduct at issue in this case was the Defendant's action in cramming a large wad of paper into an infant's mouth, which the Defendant admitted was deliberate. That the Defendant may not have intended to kill the child by stuffing a large wad of paper down his throat is irrelevant to the crimes of which he was convicted.

In this case, the Defendant admitted that he deliberately pushed a paper napkin into Trevor's mouth in an attempt to stop the baby from crying. Trevor died as a result. The Defendant killed Trevor in the commission of knowingly treating him in such a manner as to inflict injury. Accordingly, the proof is sufficient to support both of the Defendant's convictions, and this issue is without merit.

The Defendant next contends that the trial court erred in admitting into evidence that portion of one of his statements which deals with an alleged injury to Trevor's older brother, Hunter Drew.

-4-

During his first statement, the police asked the Defendant about two injuries which had occurred to fourteen-month-old Hunter. The Defendant explained that the injury to Hunter's leg occurred when Hunter was in his carseat in the Defendant's car, and the Defendant leaned the driver's seat back into Hunter's leg. The Defendant stated that this injury had occurred several weeks earlier. The police then asked about an injury to Hunter's face. The Defendant stated that, earlier on the same day that Trevor died, he again had Hunter in his carseat behind the driver's seat of the car. He was trying to get Hunter out of the car while it was raining, and in his hurry, accidentally brushed Hunter's face against a plastic piece of the car. The Defendant also complains about the trial court's admission of a photograph of Hunter's face relative to this injury.

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Rule 404 further provides, however, that evidence of other wrongs may be admissible for purposes other than to show action in conformity with a character trait. Id. Rebuttal of accident or mistake is a purpose for which such evidence may be admissible. See id., Advisory Commission Comments; see also State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985). In this case, the State argued that the evidence of Hunter's injuries at the Defendant's hands was relevant to prove the lack of mistake or accident in his fatal treatment of Trevor.

Prior to deeming such evidence admissible, the trial court must, upon request, hold a hearing outside the jury's presence; determine that a material issue exists other than conduct conforming with a character trait; and determine that the probative value of the evidence is not outweighed by the danger of unfair prejudice. See Tenn. R. Evid. 404(b)(1), (2) & (3). If the trial court substantially complies with these requirements, this Court will not overturn the trial court's ruling on the admissibility of the evidence absent an abuse of discretion. See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). If the trial court does not substantially comply with these prerequisites to admissibility, no deference is afforded the trial court's ruling. See id.

In this case, the trial court conducted the 404(b) hearing prior to the jury's being sworn in. After hearing argument from counsel, the trial court ruled inadmissible that portion of the Defendant's statement dealing with the injury to Hunter's leg several weeks prior to Trevor's death. However, the trial court ruled further that the Defendant's statement concerning the injury that occurred on the same day as Trevor's death was admissible. In so ruling, the trial court explained that the State had to prove that the injury to Trevor was inflicted "other than by accident." The trial court made no specific finding that the probative value of the proof outweighed the danger of unfair prejudice.

We think that the trial court committed error in admitting any evidence of injuries to Hunter for the purpose of proving that the Defendant's treatment of Trevor was other than mistaken or accidental. The Defendant claimed in his statement that the injuries to Hunter's face were inflicted accidentally as he hurriedly removed Hunter from the backseat of the Defendant's car. There is no proof in the record to dispute the Defendant's explanation. However, proof of prior crimes, wrongs or acts must be established by clear and convincing evidence prior to its admissibility under 404(b).

-5-

See DuBose, 953 S.W.2d at 654; Parton, 694 S.W.2d at 303. We think that the State failed to establish by clear and convincing evidence that the Defendant injured Hunter other than accidentally. For that reason, the evidence of Hunter's injuries does not assist the State in rebutting the Defendant's claim of accident or mistake. In short, the evidence has no probative value with respect to the issue for which it was admitted, and should therefore have been excluded.[1]

Nevertheless, we find the admission of the proof regarding Hunter's injuries to be harmless. There was no proof that the injuries were serious or that they required medical attention. They were not inflicted in the same manner as Trevor's. The proof that the Defendant killed Trevor by deliberately placing a large wad of paper in his mouth was uncontroverted and overwhelming. We find no prejudice suffered by the Defendant as a result of the admission of the proof regarding Hunter. Accordingly, this issue is without merit.

In his final issue, the Defendant contends that his dual convictions for first degree felony murder by aggravated child abuse, and aggravated child abuse, violate federal and state constitutional guarantees against double jeopardy. We respectfully disagree. Our supreme court has long held that dual convictions for felony murder and the underlying felony may be imposed. See, e.g., State v. Blackburn, 694 S.W.2d 934, 937 (Tenn. 1985). More recently, that court held that "aggravated child abuse is not a lesser included offense of felony murder and . . . dual convictions are [therefore] permissible in this context." State v. Godsey, 60 S.W.3d 759, 778 (Tenn. 2001). Accordingly, this issue is without merit.

The judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE

---

[1]As noted by defense counsel during the 404(b) hearing, this case is distinguishable from State v. DuBose, 953 S.W.2d 649 (Tenn. 1997). In that case, the defendant was tried and convicted of first degree felony murder by aggravated child abuse. The trial court admitted evidence that the defendant had previously injured the victim. Our supreme court held that proof of the prior injuries was relevant to proving the defendant's intent and absence of accident in inflicting the subsequent fatal injuries. In that case, however, the evidence established that the prior injuries had been intentionally inflicted by the defendant. In this case, there is no such proof. Furthermore, we are reluctant to find on the facts of this case that the Defendant's conduct with respect to Hunter was relevant to prove his state of mind with respect to his conduct with Trevor.